20300

Warren LANE, Respondent, v. TRENHOLM BUILDING COMPANY, Appellant

(229 S. E. (2d) 728)

*Messrs. Thomas E. McCutchen* and *Jeter E. Rhodes, Jr.,* *of Whaley, McCutchen & Blanton,* Columbia. *for Appellant,*

*Messrs. Bowers & Barnhill,* of Columbia, *for Respondent,*

October 29, 1976.

NESS, Justice:

This case involves the sale of a new home whereby the plaintiff-respondent, Warren Lane received a jury verdict of $12,500.00 against appellant, Trenholm Building Company. We affirm.

In 1967 or 1968 Trenholm, the developer of a subdivision, sold an undeveloped lot to Heritage Homes. Heritage intended to construct a house and paid Trenholm a small down payment and executed a second mortgage in favor of Trenholm which was to be retired when the house was sold. Heritage virtually completed the house but was not able to sell it. In 1969 it became apparent that Heritage was going out of business so Trenholm acquired the house and lot from Heritage in satisfaction of the mortgage and as-

sumption of the construction loan to Heritage. In March, 1971, Trenholm sold the house to Lane for $25,000.00.[1]

A few months after acquiring the house, Lane advised Trenholm that the septic tank was not functioning properly. Trenholm ultimately installed a new septic tank designed to work in an area with a high water table. This system also was unsatisfactory and in July, 1972, Lane instituted this action against Trenholm alleging the failure of the septic tank system to function properly breached an implied warranty that the house was fit for use as a residence.

Trenholm asserts that it could not be held liable, as a matter of law, because it was not the builder of the house. The lower court held that Trenholm was liable, because it was engaged in the real estate business, and the developer of the subdivision.

█ We hold that when a new building is sold there is an implied warranty of fitness for its intended use which springs from the sale itself.

*Rutledge v. Dodenhoff*, 254 S. C. 407, 175 S. E. (2d) 792 (1970), held that the law of *caveat emptor*, traditionally applied to defeat implied warranties in the sale of real estate by operation of a rule that all warranties in a contract for sale merge into the deed, should not govern the sale of a new house by a builder-vendor. Several reasons were given for the Rutledge decision: the transaction was primarily a sale of a house and not a conveyance of land, the disparity of bargaining positions between the seller and purchaser, reliance by the purchaser on the skill of the builder, and the inability of the purchaser to inspect the house for latent defects.

Appellant has argued persuasively that the articulated rationale of Rutledge does not apply. Appellant contends that there was no disparity in bargaining powers because

---

[1] Trenholm did not own any stock in Heritage nor did it have any control over Heritage's construction of the house.

it was merely trying to salvage its investment. The alternative it chose, assuming the construction loan and completing the house, was to that of foreclosure: hence, the bargaining position it occupied was certainly not stronger than the purchaser's.

The purchaser admitted he did not know who built the house. He could not have relied on the skill of Trenholm Builders. Since Trenholm was not involved in the installation of the septic tank or construction of the house, it had no better opportunity to inspect for latent defects than the purchaser. A VA team inspected the house, including the septic tank, and a permit to install the tank was issued by the county health authorities after they had conducted their own test. Therefore, the purchaser ostensibly was afforded all expectable protection which might result from inspections.

These arguments are cogent ones, but they fail to account for other, more elementary reasons, why an implied warranty should attach to the sale of this house.

*Rutledge v. Dodenhoff, supra,* recognized the essence of the transaction is the sale of a house and not a transfer of a parcel of land. A house is the sale of a product, similar to the sale of personalty. Once the court recognizes the essence of the transaction is the sale of a product with a clearly defined proposed use, there is little reason to apply ancient doctrines of real property law which are inconsistent with the current and historical treatment of sales of personalty in this State.

The doctrine of merger of warranties in a deed, applicable to real estate sales, has little relevancy to the sale of a product, whether it is personalty or a building. When land is conveyed, there is often no clearly defined objective in the transfer and it would be impossible to imply a warranty of fitness for any purpose. Even when a particular purpose is contemplated, as, for example, by restrictive covenants, the suitability of the land may depend on architectural proposals or other matters entirely independent of the convey-

ance. Finally, the purchaser can fully inspect undeveloped land and, therefore, when the law denies the purchaser of real estate the benefit of an implied warranty, the consequences are generally not unfair or unjust.[2]

When a product is sold, the parties contemplate an expected use of the product. One of the primary objectives of the law of contracts and sales is to carry out the reasonable expectations of the parties. To this end, the court in this State has consistently rejected *caveat emptor* and adopted the civil law rule of *caveat venditor* as part of the common law of South Carolina. *Timrod v. Shoolbred,* 1 Bay 324 (1793) ; *Champneys v. Johnson,* 2 Brevard 268 (1809) ; *Smith v. McCall,* 1 McCord 220 (1821). As applied to the law of sales, *caveat emptor* was "repudiated and exploded . . ." by the South Carolina court as "rather calculated to encourage injustice, than to inculcate correct principles of moral duty." *Champneys v. Johnson, supra,* pp. 272-273.

*Caveat venditor* is premised upon the just philosophy that a "sound price warrants a sound commodity." The court hearkened to the call of *caveat venditor* and observed that "its superior excellence has been generally felt and acknowledged." p. 273. *Champneys v. Johnson, supra.* Years later the court emphatically praised the rule as "having triumphed over a variety of opposition." *Misroon & Timmons v. Waldo & Freeman,* 2 Nott & McCord 76 (1819). See also *Southern Iron & Equipment Co. v. Bamberg E & W Railway Company,* 151 S. C. 506, 149 S. E. 271 (1929). Perhaps the greatest testimonial to the wisdom of the rule has been the adoption of the Uniform Sales Act and the subsequent enactment of the Uniform Commercial Code by every common law state, S. C. Code § 10.2-314; as described above had applied *caveat emptor,* without statutory aid.

[2] See, however, *Hinson v. Jefferson,* 287 N. C. 422, 215 S. E. (2d) 102 (1975) implied warranty of a lot based on restrictive covenants.

Under the rule of *caveat venditor,* a sale "raises an implied warranty (against latent defects) from the fairness and fullness of the price paid, upon this clear and reasonable ground, that in the contract of sale, the purchaser is not supposed to part with his money, but in expectation of an adequate advantage, or recompense." *Champneys v. Johnson, supra,* p. 272 (language in parenthesis my interpolation). "Selling for a sound price raises an implied warranty that the thing sold is free from defects, known and unknown (to the seller)." *Southern Iron & Equipment Co. v. Railway Co., supra,* 151 S. C. p. 525, 149 S. E. 271.

Disparity in the law should be founded upon just reason and not the result of adherence to stale principles which do not comport with current social conditions. In *Rutledge* the court correctly observed that the transaction was the sale of a home. Hence, the compass of the law should point to the principles which have governed sales. Trenholm purported to be selling a new house and certainly Lane's objective in purchasing the house was to provide a home for his family. The sale contemplated the use of the house as the dwelling; an implied warranty does no more than fulfill the reasonable expectations of the parties.

The law should not orphan the purchaser of a house, who has likely invested his life savings and executed a 20, 30, or 40 year mortgage, by operation of the doctrine of *caveat emptor.* Trenholm placed the house in the stream of commerce and exacted a fair price for it. Its liability is not founded upon fault, but because it has profited by receiving a fair price and, as between it and an innocent purchaser, the innocent purchaser should be protected from latent defects.

We are not unmindful that the seller may not have been a merchant as defined by S. C. Code § 10.2-314(1), and, therefore, if this was a transaction covered by the UCC, perhaps a warranty would not have existed. Article II of

the UCC was adopted with a stated purpose to standardize the laws governing commercial transactions involving personalty. Obviously, because of multistate transactions the need for uniformity is manifest. Transactions arising out of the sale of buildings are local and considerations of nationwide uniformity are of minimal concern. Accordingly, we apply our sound common law rule of *caveat venditor*.[3]

Next, appellant asserts error in the refusal of the trial court to strike evidence that Lane had been served with a Notice of Condemnation by the State Board of Health when no adjudication had been made on any matter contained therein. The respondent testified that he had been served with the Notice of Condemnation however the trial judge excluded this legal document. We agree that the Notice of Condemnation was properly excluded as lacking any probative value relevant to the issues presented. It necessarily follows that testimony regarding the service of the Notice of Condemnation was also improper and should have been struck from the record. However, the question presented here was not whether the sewage disposal system emitted a noxious odor. The issue was ultimate liability for an admittedly defective sewage disposal system. Hence, we hold that the refusal to strike the testimony was not prejudicial.

The next issue raised is whether the trial court erred in allowing an appraiser to testify as to the actual value of Lane's house in March, 1971. After examination of the objections, we conclude that they are directed to the quality of the expert testimony and go to the weight

---

[3] Our legislature continues to place South Carolina in the vanguard of consumer protection. One of the few South Carolina amendments to the Uniform version of the Commercial Code requires any disclaimer of warranty to be by specific language and "if the inclusion of such language creates an ambiguity in the contract as a whole it shall be resolved against the seller." S. C. Code § 10.2-316(2), and the General Assembly also recognized the clear drift of the common law in this State when it codified Restatement of Torts (2) Section 402A, which imposes strict liability in tort upon the suppliers of defective products. S. C. Code § 66-371, *et seq.*

rather than the admissibility of the testimony. *Duke Power Company v. Opperman,* 266 S. C. 99, 221 S. E. (2d) 782 (1976).

All other exceptions are without merit.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, RHODES and GREGORY, JJ., concur.