**EDWARDS, INC., Plaintiff,**

v.

**ARLEN REALTY AND DEVELOPMENT CORPORATION, Laurens Plaza, Inc., Independent Enterprises, Inc., Arlen Finance Corporation, Arlen Management Corporation and Cooper Carry & Associates, Inc., Defendants.**

Civ. A. No. 77–1844.

United States District Court,
D. South Carolina,
Greenville Division.

Oct. 12, 1978.

Donald A. Harper, Haynsworth, Perry, Bryant, Marion & Johnstone, Greenville, S. C., for plaintiff.

Vance B. Drawdy, John A. Hagins, Jr., Joseph M. Jenkins, Jr., Greenville, S. C., for all defendants except Cooper Carry & Associates.

Claude M. Scarborough, Jr., and Richard B. Watson, Columbia, S. C., for Cooper Carry & Associates.

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INVOLUNTARY JOINDER OF PARTIES

HEMPHILL, District Judge.

This is a diversity action brought pursuant to 28 U.S.C. § 1332 and commenced by filing of Complaint with the Clerk of Court on September 12, 1977. The plaintiff is a lessee of a building in the Laurens Plaza Shopping Center. Defendants are allegedly builder-designers, owners, and managers of the Shopping Center.

The Shopping Center was invaded by flood waters on October 9, 1976. Plaintiff alleges it had engaged in business at the subject location continuously from 1967 until October 1976 (with the exception of suspended business in September 1973 resulting from a prior flood) when the flood occurred, and that as a result of the same lost merchandise, fixtures and business, all to its damage. It now seeks damages based on theories that the premises were warranted and covenanted to be fit and suitable for the operations of its tenants, but was not, due to its propensity to flood. Edwards, Inc. alleges that defendants responsible for

the development, design, building and maintenance of the Center were negligent, grossly negligent, reckless, willful and wanton in its development by failing to consider the flooding propensities of the area, and that the lease originally entered into between plaintiff and defendant, Laurens Plaza, Inc., has been breached in an express material particular: failure to provide adequate drainage facilities for rain and surface water.

At the time of the flood the contents of the building along with the loss due to business interruptions were insured by the National Flood Insurance Association (N.F.I.A.) for the first $100,000.00 of damage and First State Insurance Company (First State) for amounts in excess thereof.

Plaintiff has been compensated for loss of merchandise, fixtures and business interruptions resulting from the flood and accruing up through January 31, 1977. The insurers have been subrogated by way of agreement to the extent of the indemnity paid. However, Edwards was not compensated for its loss of business from February 1, 1977 through August 31, 1977, the period immediately preceding sale or assignment of all plaintiff's assets and liabilities.

The matter is now before the court on defendant, Arlen Finance Corporation's (A.F.C.) motion for summary judgment and all defendants' motion to join N.F.I.A. and First State, admittedly real parties in interest, as parties plaintiff.

With respect to defendants Laurens Plaza, Inc., Independent Enterprises, Inc., Arlen Management Corporation, and Cooper Carry & Associates, Inc., it should be noted that all were engaged in some capacity with the initial design, outlay and construction of the Laurens Shopping Center. It is the fruition of their efforts in light of what plaintiff alleges to be a knowledge on their part of the propensity of the situs of the Shopping Center to flood which gives rise to the alleged warranties and covenants that the premises were tenable and fit and suitable for operation of merchandising stores, and also the negligence, gross negligence, willful and wanton acts of inadequate investigation of the area to ascertain the flooding propensities, failure in construction to compensate therefor, and failure to warn of the flooding propensities of the area which give rise to these claims. Also asserted against these defendants are certain failures to repair and maintain the premises in order to prevent devastating flood damage.[1]

Defendants Arlen Realty and Development Corporation and Arlen Finance Corporation stand on a somewhat different footing than the previously mentioned defendants. Plaintiff seeks to hold these two entities accountable for the damage done, not by virtue of direct participation in the original planning design and building of the Shopping Center, but due to their status as parties to certain agreements, and assignments and the attendant responsibilities thereunder. See allegation No. 13 of the Complaint.

Arlen Realty and Development Corporation does not press the propriety of its being joined as parties defendant to the action. However, Arlen Finance Corporation vehemently protests its continued status as a party defendant. It does so on the basis that it had had and does not have legally cognizable obligations or duties flowing to plaintiff. Its zealousness in pressing its motion for summary judgment is understandable in the light of the fact that its retention as a party defendant would preclude the joinder of First State as a party plaintiff, in that it and First State are both entities incorporated under the laws of the State of Delaware and are therefore non-diverse. See *Virginia Electric & Power Co. v. Westinghouse Electric Corp.*, 485 F.2d 78 (4th Cir. 1973) *cert. den.* 415 U.S. 935, 94 S.Ct. 1450, 39 L.Ed.2d 493. By virtue of language in the *Westinghouse* case, granting of Arlen Finance Corporation's motion for summary judgment and

---

1. Indeed, in allegation No. 30(m) of the Complaint plaintiff alleged that defendants were put on further notice by the 1973 flood beforementioned, and should have taken appropriate measures to remedy the premise's inadequacies.

the attendant removal of potential non-diversity would mandate the insurance companies' joinder as parties plaintiff. See, *infra.* In order to determine the meritoriousness of A.F.C.'s motion the court must explore the documents tying it to the Shopping Center and its status as the holder thereof.

A.F.C. was incorporated in Delaware on June 22, 1974 and authorized to do business in South Carolina on June 28, 1974. The corporation is passive in nature and was set up at the insistence of Chase Manhattan Mortgage and Realty Trust. (Chase) The purpose of incorporation of A.F.C. was to establish a separate entity operational as a financing vehicle to which Chase was to make a loan of approximately $16,000,-000.00 and in which A.F.C. was to hold security for the loan and make payments on the same. The income source and the source of security for the loan were represented by various documents and rights thereunder flowing to A.F.C., which included an assignment of mortgages and long term leases to A.F.C. See deposition of Steven Turk, pp. 5–6, and 12–14.

Two documents assigned to A.F.C. for purposes of security and income source for payment of the Chase debt link A.F.C. to the Laurens Plaza Shopping Center. The first and more important of the two, indeed the only document seriously urged by plaintiff as placing legal responsibility on A.F.C., is a long term lease originally entered into between defendant Arlen Realty and Development Corporation and Rens Associates, a South Carolina limited partnership, entered into between the parties on May 31, 1972, leasing to Rens the lands on which the Shopping Center was built together with all site improvements situated thereon, which according to the agreement, included among other things parking lot drainage systems. See Exhibit A to affidavit of Augustus Stephas filed in support of A.F.C.'s motion for summary judgment. Arlen

Realty and Development's interest as lessor under the lease was assigned to A.F.C. on July 12, 1974. (See Exhibit C to affidavit of Stephas.)

The second document assigned to A.F.C. tying it to the Laurens Plaza Shopping Center, and not seriously urged by plaintiff as establishing liability as against A.F.C. for the present claims, is a mortgage given by Rens Associates as mortgagor to Arlen Realty and Development as landlord-mortgagee obligating as collateral for a debt in principal sum of $1,650,000 all of Rens' interest in the leasehold estate established by the above referenced long term lease, together with buildings, structures and improvements other than site improvements situate on the land site of the Laurens Plaza Shopping Center. (See Exhibit D to affidavit of Stephas.) On the same date the mortgage was assigned by A.F.C. to Chase, consistent with A.F.C.'s posture as a passive financing entity for effectuation of the Chase loan previously referred to.

It is the lease assigned to A.F.C. and its status as assignee of the lease and the alleged duties accruing as assignee of the lease on the date of assignment which is urged by plaintiff as establishing at least possible legal responsibility for the flood damage beginning October 1976. A close inspection of the 80-page document representing the leasehold agreement and the assignment thereof is necessary.[2]

The long term lease here in question represents the growing popularity of such long term leasing devices in which the lessor is assured a handsome rate of return on his property, income and capital gains tax rate benefits and a shifting of the risk of development to the lessee who in turn leases space created by improvements on the land to tenants of its own. The lease in question grants Rens a leasehold interest of 20 years with the option to renew for 10 years three times consecutively. In return Rens is obli-

---

**2.** It should be noted that the long term lease here in question is subsequent to and unrelated to the lease referred to in the Complaint which represented a direct and contractual relationship between Laurens Plaza, Inc., and plaintiff and on which plaintiff claims breach of express affirmative obligations assumed by Laurens Plaza as to repair and maintenance of drainage facilities.

gated to pay a certain fixed rental plus a percentage rental based on the amount of rent received by Rens from subtenants or other persons occupying the space and improvements on the demised premises.[3]

Any duties that A.F.C. assumed in its status as assignee of Arlen Realty and Development's interest in the lease aforementioned would accrue to A.F.C. as of the time of the assignment of the lease, July 12, 1974. It is clear that the common law claims asserted by plaintiff for the negligent, gross negligent, willful and wanton development of the Shopping Center are not applicable to A.F.C. It had no hand in the development of the Shopping Center. Its incorporation date as well as the date of assignment of the lease were time removed from any developmental process. It is likewise time removed from Arlen's decision to assume the role of tenant in the Shopping Center. That decision was made in August, 1967, at which time plaintiff and Laurens Plaza, Inc. assumed the roles as tenant and landlord respectively. It is the leasehold interest which plaintiff received pursuant to that agreement which plaintiff alleges to be unsuitable for a merchandising operation and in which plaintiff seeks legal accountability on warrant and failure of duty to warn principals. Whether or not plaintiff can maintain an action for a negligent, gross negligent, willful and wanton development and/or a breach of warranty against the defendants other than A.F.C. is questionable. See *Anderson Drive-Inn Theatre, Inc. v. Kirkpatrick,* 123 Ind.App. 388, 110 N.E.2d 506 (1953); 51C C.J.S. *Landlord and Tenant* § 304; 49 Am.Jur.2d, *Landlord and Tenant,* § 768. The court, however, does not want to preclude plaintiff's advocacy and notes recent trend by the courts including the South Carolina Supreme Court to apply warranty notions in transactions in real estate. See *Lane v. Trenholm Bldg. Co.,* 267 S.C. 497, 229 S.E.2d 728 (1976).

■ With respect to A.F.C. the question becomes whether there is any possible basis for holding it liable for the flood damage either under the express terms of the lease assigned or by any implied in law obligations arising out of its "stepping into the shoes" of Arlen Realty and Development Corporation, as assignee of the long term lease.

A review of the applicable law and of the lease in question compels the court to conclude that A.F.C. can in no way possible be held accountable for the damage done to plaintiff in the present action.

The thrust of plaintiff's allegation against A.F.C. is that it had under the lease or by virtue of the common law a duty to repair or maintain the premises in question and that failure to repair or maintain or make improvements such that flooding would not occur was a breach of the lease agreement or a common law duty.

■ It is well established that a landlord has no duty to its tenant to make repairs or improve the premises absent a contract to do so. *Sheppard v. Nienow,* 254 S.C. 44, 173 S.E.2d 343 (1970); *Conner v. Farmers and Merchants Bank,* 243 S.C. 132, 132 S.E.2d 385 (1963). However, whether obligated or not to make the repairs, once a landlord does in fact undertake to make the repairs he is held to a standard of due care. *Conner, supra.* Here there is no allegation, or evidence of any gratuitous undertaking of repairs on the part of A.F.C. As such, A.F.C. by stepping into the shoes of the lessor owed no common law duty to its tenants to repair. And of course a party in the position of Edwards of Laurens, whose status viewed in a light most favorable to it was that of a subtenant of A.F.C. could

---

**3.** It is not clear that rent paid by Edwards of Laurens inured even indirectly to the benefit of Arlen Realty and Development and subsequently to its assignee A.F.C. Indeed, plaintiff represented to the court in its response to the court's July 14, 1978 Order requesting additional information, the rent was paid to Laurens Plaza, Inc., as its direct lessor and not to Rens Associates. If paid to Rens, of course, the rent paid to Arlen Realty & Development Corp., or A.F.C. would be reflected in the percentage rental particular. Indirect benefit to A.F.C. or not, however, has no bearing on the outcome of the summary judgment motion.

have no greater rights as against A.F.C. than A.F.C.'s tenant, Rens Associates.[4 & 5]

After reviewing the long term lease the court is convinced that the provisions likewise impose no obligation on the part of the landlord or one stepping into the shoes of the landlord, which would inure to the benefit of Rens Associates or one as plaintiff whose status is that of subtenant or occupant of the space and buildings comprising the shopping center.

■ The long term lease in question is termed a net lease which absent minor adjustments provided for by the terms of the lease itself obligates Rens Associates to pay the rent agreed upon by the parties without account for liabilities, expenses, impositions, taxes, premiums for insurance, or disaster to the premises. Section 6.01 of the lease expressly disclaims any duty by the landlord, or one in the shoes of the landlord, to furnish service facilities, make any repairs or alterations in or to the demised premises and places the burden for the same on Rens Associates. Section 604 likewise places the burden of repair and maintenance on Rens Associates. By these sections of the lease there is no alteration of the common law rule with no duty to repair, but in fact an affirmance and reinforcement of the same.

■ Plaintiff relies on Section 6.05(d) of the lease which provides that the tenant shall have the right to make alterations and changes in the premises but that any structural alteration involving an aggregate estimated cost of more than $100,000.00 shall be approved in writing by the landlord; and Section 6.09 *which allows* the landlord to enter the premises to make repairs. Neither one of these sections however, places any affirmative obligation on the part of lessor, or assignee of lessor's interest, to repair. One merely allows the lessor to improve organic structural changes and the other gives it the opportunity although not the obligation to enter the premises and repair.[6]

In addition, there are several sections in the lease which expressly disclaim liability on the part of the lessor and in which Rens Associates undertakes to indemnify lessor. Included in these are Sections 3.06, 6.03, 6.07, and 6.08, which expressly disclaims any liability for water damage. Whether or not such disclaimers and indemnity provisions would be substantively applicable to one in a position of subtenant or occupant of the demised premises as Edwards, Inc., a nonsigner, is unnecessary for the court to decide, in that the court finds no duty under common law or under the lease as discussed in the preceding paragraphs on the lessor or A.F.C.'s part to repair or maintain the premises so as to prevent flooding. But see

4. As before mentioned it is not clear even after submission of answers to interrogatories propounded by the court pursuant to its July 14, 1978 Order, whether Edwards, Inc. was a subtenant of Rens Associates. In fact, as before indicated all checks seemed to be paid directly to Laurens Plaza, Inc. However, under the terms of the long term lease Edwards, Inc. was included within the definition of subtenant (§ 2.01(l) of the lease).

5. It should be noted that although the landlord generally has no duty to repair or maintain leased premises, where he retains possession and control over areas common to all tenants, he does owe a duty of due care. Retention of such possession and control is common in shopping center situations. See *Bruno v. Pendleton Realty Co.*, 240 S.C. 46, 124 S.E.2d 580, 95 A.L.R.2d 1333 (1962). In the present situation the drainage systems which plaintiff claims A.F.C. had a duty to repair and maintain were not within A.F.C.'s control and posses-

sion. In fact, such were included within the definition of site improvements (see § 2.01(b)), and the site improvements were in fact leased to Rens Associations. Additionally, § 6.01 of lease expressly divests control of the landlord over such areas and places in Rens Associates the sole obligation for repair and maintenance of those areas. As such the general rule of no duty to repair and maintain applies in the present situation.

6. There is no indication in the record that any organic structural change requiring the written approval of the landlord was made or desired to be made. Likewise, there is no evidence in the record and it is not alleged that the landlord or A.F.C. entered the premises under its option to do so and made repairs. Of course, if such had been the case, once the repairs were undertaken although not required to be undertaken, the repairer would be held to a standard of due care. *Conner, supra.*

12 A.R.3d 958 and the conflicting cases contained thereon for discussion of the issue.[7]

In light of the foregoing discussion, it is the judgment of this court that A.F.C. had no duty contractual or otherwise to Edwards, Inc. to repair or maintain or alter the premises so as to prevent flooding or any other duty in any other particular. As such A.F.C.'s motion for summary judgment is granted.

When judgment is entered for A.F.C. the impediment of non-diversity will be removed. The question then arises whether or not N.F.I.A. and First State admittedly subrogees of the substantial portion of Edwards, Inc. claimed-for flood damage should be joined as real parties in interest to the action. There is no dispute to the fact that both N.F.I.A. and First State are real parties in interest. Prior to A.F.C.'s motion for summary judgment plaintiff urged, convincingly so, that such joinder would be impermissible in that diversity would be destroyed and this court's power to hear the case vitiated. Once the summary judgment motion was made, plaintiff without prejudicing its position in opposition to the motion for summary judgment urged alternatively that even if the summary judgment motion were to be granted joinder of the insurance carriers was not necessarily mandated. Its reasoning being that its claim which consisted of loss of business between February 1, 1977 and August 31, 1977 would be somehow prejudiced by its association with insurance companies as parties plaintiff in the eyes of the jury.

The leading case in the Fourth Circuit on joinder of an insurance company as party plaintiff due to its status as partial subrogee over an insurance claim is *Virginia Electric and Power Co. v. Westinghouse*

*Electric Corp., supra.* There an insurer had paid damage to an insured the substantial portion of injury to its insured occasioned by the failure of one of the insured's power plants. Its insurance carrier was subrogated the extent of its payment. According to agreement between the plaintiff and the insurance carrier the plaintiff was to prosecute the action in its name, controlled however by the insurance carrier. Defendant moved to dismiss the action on the ground that the insurance carrier as a real party in interest was not joined to the action and that if joined would defeat the diversity jurisdiction of the court. The court did not force its joinder, holding that although a real party in interest by virtue of its status as partial subrogee, its joinder would destroy the diversity jurisdiction of the court. Although holding the insurer was a party to be joined if feasible[8] the case held that it was not an indispensible party to the action and therefore did not mandate dismissal of the action since its joinder was not feasible due to its non-diversity. The court's decision was based on the fact that the insurance carrier had controlled litigation, and that the carrier would be bound by any judgment in favor of defendants. Other less compelling reasons were given which substantiated that determination. *Id.* at p. 86.

Before determining whether or not the insurance carrier was an indispensable party in whose absence the suit must be dismissed due to its common citizenship to certain defendants, the court made an understandable but unfortunate statement of law. On Page 85 of the opinion the court stated, "It is clear that a partial subrogee is a person to be joined if feasible under Federal Rules of Civil Procedure 19(a)." It

---

**7.** Plaintiff also points to the fact that Arlen Finance Co. was a party to a receipt and release pertaining to the first flood suit in a Court of Common Pleas for Laurens County, Civil Action No. 76–CP–30–41, another federal suit in the Greenville Division of Federal Court in which Laurens Plaza, Inc. was plaintiff, Civil Action No. 77–534, and a second case in the Court of Common Pleas for Laurens County, Docket No. 77·CP-·30, arising from the second flood which is the subject matter of the present

law suit, in which Arlen Finance along with other members of the Arlen community released Cooper Carry & Associates, Inc. from certain contingent claims against them. Plaintiff seems to indicate that by being party to such release A.F.C. "admits" it is a proper party to such actions concerning the flooding. Such, of course, is not persuasive.

**8.** See Fed.R.Civ.P. 19(a).

referred to Rule 19(a) in footnote form and cited *United States v. Aetna Casualty and Surety Co.*, 338 U.S. 366, 381–82, 70 S.Ct. 207, 94 L.Ed. 171 (1949) for that proposition. In doing so, the Court bypassed the analysis provided for in Rule 19(a) which is necessarily involved in a situation in which an admitted real party in interest is sought to be joined but in which neither plaintiff nor insurer as partial subrogee wishes for such joinder. In bypassing the analysis and then asserting as a proposition of law that all partial subrogees are persons to be joined if feasible, applying that rule to the action before it, and then proceeding to a 19(b) analysis to determine whether or not to dismiss the action in a situation in which joinder of the partial subrogee is not feasible, the Fourth Circuit has precluded district courts bound by its fiat to apply the rules and effectuate their purpose, to provide justice between parties and prevent multiple and inconsistent law suits.

Judge Craven stated on Page 84 of the opinion,

Under the common-law practice, a subrogee or assignee could enforce his rights only in the name of the subrogor or assignor. The original purpose of Rule 17 was to liberalize party rules, i. e., to allow an assignee or subrogee to enforce his rights in his own name. The permissive function of Rule 17 has been accomplished, and Rule 17 now serves primarily a negative function. It is to enable a defendant to present defenses he has against the real party in interest, to protect the defendant against [the] subsequent action by the party actually entitled to relief, and to insure that the judgment will have proper res judicata effect. In view of its current purpose, to protect defendants against subsequent suits, Rule 17 will not bar a suit by a real party in interest which will have the effect of preventing a multiplicity of suits.

Later at the same page, Judge Craven stated, "[e]ven without joinder the partial subrogee is generally precluded from bringing a subsequent action against the defendants where a judgment has been rendered in a suit by the subrogor for the entire loss.

Multiplicity of suits, one by the subrogor for his loss and one by the subrogee for the reimbursed loss, is thus prevented as fully as if joinder were compelled." After this statement at Page 85 the statement was made that a partial subrogee is a person to be joined if feasible under Federal Rules of Civil Procedure 19(a).

■ Federal Rule of Civil Procedure 19(a) provides, in part, as follows:

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.
. . .

The thrust of Rule 19(a) is that a person should be joined if in his absence the parties already in the suit may be subjected to multiple claims. It had been stated previously at Page 84 that there was no such danger in the case before the court. However the court held that partial subrogees are persons to be joined if feasible and that the insurance carrier in the case was a party to be joined if feasible under Rule 19(a). With the court obviously convinced that there was no danger of multiple, inconsistent suits and convinced that the representation of the insurer's interests was full and adequate, it would seem that the insurer was not even a 19(a) party, one to be joined if feasible. The court did not take that position, however. As such, unfortunately, the holding is broader than dictated by the facts of the case.

■ Even so the court is bound by that part of the *Virginia Electric and Power Co.*

holding a partial subrogee a person to be joined if feasible under Rule 19(a). It hopes, however, that our circuit will abandon its flat unconditional rule and allow flexibility in the application of the rules so as to enable the courts to mete out justice between the parties.

Bound by the *Virginia Electric and Power Co.* case, this court is reluctantly acquiescent in its application. It would seem, however, in situations such as this in which an insurance carrier owns a claim as partial subrogee, and in which the insured seeks to prosecute the *whole claim* in his name that the insurer's joinder should not necessarily be compelled. In these situations the insurance company's claim is by way of contractual or common-law subrogation and is therefore purely derivative of the insured's claim. The insurance company's claim rises and falls on the same facts, is subject to the same prima facie burdens of proof, and same defenses as if the claim had never been assigned and the insured never indemnified. This is so because the insurer is an assignee by operation of law and steps into the shoes of the assignor-subrogor. If, as in the present case, the insured has a claim in excess of the indemnification provided by the insurer, then he has a sufficient stake in the outcome of the litigation to assure its vigorous prosecution. And if as in the present case the insurer is amenable, following a ratification of the judgment or agreement, to be bound by the judgment and is willing to allow the insured to prosecute the claim with its assistance no harm can befall the insurer. Its forced joinder can therefore have no effect on the substantive claim. The substantive claim is the same. The only issue between insured and insurer is the proration of recovery. In contrast, forced joinder of the insurer could quite possibly result in a verdict not based on the substantive merits of the claim but rather on inherent prejudice against insurance companies. A variety of courts have recognized this; and an amendment to Federal Rules of Civil Procedure 17(a) allows protection against the danger.

With the addition of the amendment referred to above in 1966, Rule 17(a) reads in part as follows,

(a) *Real Party in Interest.* Every action shall be prosecuted in the name of the real party in interest. . . . *No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.* (Emphasis added.)[9]

Counsel for plaintiff has indicated that the insurance carriers here in question have indicated a willingness to file a ratification of the present action, so that there would be no question as to the binding effect on a judgment on them.

In a case factually similar to the one at bar in which insurance carriers as partial subrogees were sought to be joined involuntarily a district court noted,

In contrast to this lack of prejudice to defendant Hope if Potomac and General Accident [insurers-partial subrogees] are not joined stands the risk of prejudice to the two insurers, and especially to plaintiff, if their joinder is compelled. The law recognizes that the presence of an insurance company on either side of a case may effect a jury's decision on the merits, and consequently the law prohibits the mention of the fact of insurance in a case if at all possible. In all candor, this court can discern no reason for Hope's motion to join the insurance companies here other than to gain the possible advantage at trial which the presence of the insurance company on the plaintiff's side might lend. This Court is not

---

9. The court notes that a 1966 amendment to Rule 17(a) allows the result here helplessly urged, and allows the real party in interest rule to perform as the Fourth Circuit put it, its now predominant negative function and with its application does not render a partial subrogee insured a party to be joined if feasible.

inclined to aid such strategy. At its worst, this prejudice that might result from the insurer's joinder could result in complete denial of recovery to plaintiff and the insurers. On a lesser level, this prejudice could result in a reduction of damages, in which case the full effect of the prejudice would fall on plaintiff alone, since the insurers have first lien on any recovery obtained. *White Hall Bldg. Corp. v. Profexray Div. of Litton Ind.,* 387 F.Supp. 1202 (E.D.Pa.1974) at p. 1206.

The *White Hall* case was even less compelling than the present situation in that there was no commitment on part of the insurance carrier to ratify the judgment or agree to be bound by it as provided for by Rule 17(a) as amended. The court noted, however, as a matter of law that since the carriers would control the litigation that they would be bound by notions of res judicata.

A similar result was reached in *Prudential Lines, Inc. v. General Tire Intern. Co.* 74 F.R.D. 474 (S.D.N.Y.1977). There the court held that since the partial subrogee would be bound by any judgment rendered against the insured that the insureds although real parties in interest were not even necessary parties which should be joined if feasible. Finally the case of *James v. Nashville Bridge Co.,* 74 F.R.D. 595 (N.D.Miss.1977) held, without discussing the possible prejudical effect of joinder of the insurance carriers, that due to the above mentioned amendment to Rule 17(a) the plaintiff's workmen's compensation insurance carrier an admitted partial subrogee and real party in interest would not be required to be joined as a party plaintiff if it filed a ratification of the action binding the insurer to its ultimate disposition. See also *Urrutia Aviation Enterprises, Inc. v. B. B. Burson & Assoc., Inc.* 406 F.2d 769 (5th Cir. 1969).

The results reached in these cases are logical, just and effectuation of the purposes of Rule 17 and Rule 19. Results in those cases allow a just adjudication of the substantive claim on the merits unfettered by inherent prejudices against insurance companies. The result that not all insurer partial subrogees are necessary parties and therefore parties to be joined if feasible, in addition to not prejudicing defendants (other than by allowing them unfair advantage due to the inherent prejudice against insurance companies) still allows the partial subrogee sufficient flexibility in decision as to whether or not to join as a formal party in the action and prosecute its own claim, for it still has at its disposal Federal Rules of Civil Procedure 20, the permissive joinder of parties rule, and Federal Rules of Civil Procedure 24, the intervention rule.

In spite of the above, this court is bound by Fourth Circuit precedent and must follow the *Virginia Power and Electric Co.* case. As such, it is the order of this court that the N.I.F.A. and First State be joined as party plaintiffs.

In summary, defendant A.F.C.'s motion for summary judgment is granted; and all defendants' motion for involuntary joinder of N.I.F.A. and First State as involuntary parties plaintiff is granted.

AND IT IS SO ORDERED.