TOM T. BERNSTEIN, JR., AND SUSAN K. BERNSTEIN, APPELLANTS,
V. LAWRENCE A. AINSWORTH AND GERALDINE AINSWORTH, AND
HOCKENBERGER & CHAMBERS COMPANY, A NEBRASKA
CORPORATION, JOINTLY AND SEVERALLY, APPELLEES.
371 N.W.2d 682

Filed August 9, 1985.   No. 83-700.

David A. Beck of Baker & Beck, P.C., for appellants.

Edward F. Carter, Jr., and Mark D. Petersen of Barney, Carter & Johnson, P.C., and Cleo Robak, for appellees Ainsworths.

Douglas R. Milbourn of Tessendorf, Milbourn & Fehringer, P.C., for appellee Hockenberger & Chambers Company.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.
This is an appeal from an order dismissing plaintiffs-appellants' petition seeking recovery for damages to their home resulting from the overflow of a manmade lake. The trial court sustained the separate demurrers of defendants-appellees. The plaintiffs-appellants, Tom T. Bernstein, Jr., and Susan K. Bernstein, husband and wife (hereinafter Bernsteins), brought their action based on alternative theories of strict liability, negligence, or breach of implied warranty. The defendants were Hockenberger & Chambers Company, a Nebraska corporation (hereinafter Hockenberger), which developed the lot on which Bernsteins' home was located, and Lawrence A. and Geraldine

Ainsworth, husband and wife (hereinafter Ainsworths), who bought the lot, had a house constructed thereon, and sold that house to the Bernsteins.

Hockenberger's demurrer alleged that the petition showed a misjoinder of parties defendant, misjoinder of causes of action, and a failure to state a cause of action. Ainsworths' demurrer claimed only a failure to state a cause of action.

As stated above, the trial court sustained the separate demurrers and dismissed plaintiffs' petition. For the reasons set out below we affirm.

First of all, we note that a demurrer admits all well-pleaded facts. *Nebraska Sch. Dist. No. 148 v. Lincoln Airport Auth., ante* p. 504, 371 N.W.2d 258 (1985). Defendants, therefore, by their demurrers admitted the facts set out in Bernsteins' petition. Those facts were that on January 30, 1980, Bernsteins purchased a house from Ainsworths. The Ainsworths had purchased a building lot from Hockenberger on August 29, 1979, and had a house built on the lot. Hockenberger had developed the Northbrook Addition to the City of Columbus, Nebraska, in which addition the lot sold to the Ainsworths was located. As a part of the development of the addition, Hockenberger had constructed a manmade lake "abutting said addition which was completed in 1972." Ainsworths' lot was adjacent to this lake. The grading, filling, and leveling of this lot, and the installation of water, sewer, and paving to the lot were completed in September of 1974.

On August 5, 1981, the Northbrook Addition was subject to a rain of approximately $5\frac{1}{2}$ inches during a period of approximately 3 hours. The runoff of surface waters filled the manmade lake, and during and immediately after the rain the water level of the lake rose, the lake overflowed, and plaintiffs' house was flooded to a depth of approximately 31 inches on the ground floor level, causing damages to Bernsteins' home.

Based on these facts, the Bernsteins pled three "causes of action" in their petition. In this connection we note that what plaintiffs have pled is one cause of action against each of two sets of defendants while setting out three different theories of recovery or three different reasons why defendants are allegedly separately responsible to plaintiffs in damages. See

*Vantage Enterprises, Inc. v. Caldwell*, 196 Neb. 671, 244 N.W.2d 678 (1976). The different theories of recovery will be discussed separately.

## STRICT LIABILITY

Bernsteins' first theory of recovery as to Hockenberger is that Hockenberger is liable under a theory of strict liability. Bernsteins have pled that Hockenberger completed the manmade lake in 1972 and sold the vacant lot next to that lake to Ainsworths in 1979 and that there were such defects in the development of the lot that Hockenberger was strictly liable for all damages resulting from those defects. Any factual allegation as to such defects is missing from the petition. Bernsteins allege only conclusions such as "said lot as constructed would subject any improvements thereon to flooding," and "the level of said lot in relationship to the level of the adjacent lake is to [sic] low." By these allegations Bernsteins have pled that Hockenberger's construction or manufacturing (i.e., the grading, filling, and leveling) of the lot resulted in rendering Hockenberger strictly liable to all future owners of the lot in question for any defects in the lot. This allegation seeks to apply the doctrine of strict liability to real property transactions—the first time such a question has been presented to this court. Bernsteins state the proposition of law they allege is applicable as: "A developer of land or houses erected thereon may be strictly liable in tort to the ultimate owner for damages suffered as proximate result of latent defects in the process of manufacturing the lot or the house located thereon." Brief for Appellants at 20. In support of the proposition, Bernsteins cite *Avner v. Longridge Estates*, 272 Cal. App. 2d 607, 77 Cal. Rptr. 633 (1969), which case in turn relies on *Schipper v. Levitt & Sons, Inc.*, 44 N.J. 70, 207 A.2d 314 (1965), and *Kriegler v. Eichler Homes, Inc.*, 269 Cal. App. 2d 224, 74 Cal. Rptr. 749 (1969). The latter two cases, *Schipper* and *Kriegler,* rest on fact considerations not present in the case at bar. In *Schipper* the defendant was a mass developer of houses and had sold thousands of similar houses in planned communities. The individual sales were made from a model, and the individual houses, including water and heating, were "manufactured," as

the term is ordinarily used. In *Kriegler* the defendant builder had "manufactured" 4,000 homes which included heating by the installation of steel tubes in the floor. In *Schipper* a child was injured when burned by excessively hot tapwater, and in *Kriegler* there was only property damage resulting from the early deterioration of the steel heating tubes embedded in the floor. Both cases applied the doctrine of strict liability. In *Kriegler* the court stated at 269 Cal. App. 2d at 227, 74 Cal. Rptr. at 752: "We think, in terms of today's society, there are no meaningful distinctions between Eichler's mass production and sale of homes and the mass production and sale of automobiles and that the pertinent overriding policy considerations are the same." In *Schipper* the New Jersey court drew much the same analogy between the manufacturing of homes and the manufacturing of automobiles.

It is obvious that the situations discussed in *Schipper* and *Kriegler* are not present in the case before us. Here, there is no "mass production" alleged, nor, in considering the position of Hockenberger, is there any allegation of improper construction of the integral parts of a house.

It is clear, however, that in *Avner v. Longridge Estates, supra*, the *Schipper* and *Kriegler* holdings were extended one step further to hold the developer-vendor of a lot strictly liable for latent defects in a tract of lots on "hillside properties." The court stated at 272 Cal. App. 2d at 615, 77 Cal Rptr. at 639:

> Here we have allegations that defendants manufactured the lot by cutting, grading, filling and compacting for the purpose of sale to the public and the construction of a house thereon, knowing that if said work was defective, it would cause damage to any improvements thereon; that the manufacturing process was defective in that it had inadequate provision for drainage, which caused water to accumulate between the fill and bedrock, in that it had organic matter beneath the fill which decomposed, causing the lot pad to settle; and in that it had not been sufficiently compacted, which also caused the lot pad to settle. The alleged defects were not visible or apparent to a purchaser; conceivably they were many feet beneath the surface of the lot pad.

The California court took judicial notice of matters that, in the factual posture of the case before us, we cannot do. The court states at 272 Cal. App. 2d at 611-12, 77 Cal. Rptr. at 637:

It is common knowledge that with modern grading and trucking equipment, earth is moved considerable distances for filling purposes, that it is not improbable for the imported soil to have entirely different characteristics from those of the native soil. It is also common knowledge that geologists and soils engineers are able to determine with a reasonable degree of certainty the stability of soil from tests of the surface and subsurface, and that if adequate and proper tests are made, it is highly improbable that any condition affecting stability will remain unknown and latent.

In the amended petition herein there are no factual allegations which would bring this case within the holdings of the cases above cited determining strict liability on builders of homes or developers of lots. There are no allegations of mass production of lots nor any allegations as to massive moving of earth resulting in unstable soil for foundations. There is no allegation of latent defects. In the posture of this case, it is not appropriate for this court to make any determination as to imposing strict liability on a developer of vacant lots. The trial court properly sustained the demurrer attacking the petition on the ground that no cause of action was stated as to Hockenberger on the theory of strict liability. We hold, under the allegations of the petition herein, the seller of the vacant lot is not subject to strict liability for damages resulting from the use of the lot, and the seller of the vacant lot does not impliedly warrant the suitability of the lot where the seller of the lot does not build on the lot or control such building.

Similarly, we determine that there is no strict liability on Ainsworths, the vendor of the improved lot. In Bernsteins' petition it is pled that Ainsworths "caused to be built thereupon a house." It is not shown whether the Ainsworths were builders or merely purchasers of a newly built house, and we will not impose strict liability on all owners of residential houses who sell their residences.

.The trial court was correct in determining that Bernsteins'

petition did not state a cause of action against any of the defendants, insofar as that cause of action depends on strict liability.

## NEGLIGENCE

Bernsteins allege in their petition that Hockenberger was negligent in its "construction" of the lot in "developing or constructing Plaintiffs' lot at its present grade elevation adjacent to the lake created by Defendant [Hockenberger] which it knew or in the exercise of reasonable care should have known presented an unreasonable risk of harm to persons such as Plaintiffs." We decline to hold at this time that a developer of a lot, under some circumstances, may or may not be liable for negligence in developing the lot. What we do determine is that Bernsteins' petition does not state facts which constitute negligence.

We note that "[f]or purposes of determining the sufficiency of a petition to state a cause of action, we must accept as true all facts well pleaded, but we do not accept as true facts not well pleaded, nor do we accept as true conclusions of law . . . of the pleader." *County of Knox v. City of Creighton*, 214 Neb. 196, 197, 333 N.W.2d 395, 396 (1983). The manmade lake referred to throughout the petition is not factually described as to size, level of water, source of water, depth, configuration, spillage, runoff provisions, or any other facts concerning it. Hockenberger's negligence is alleged to be that it developed a lot "at its present grade elevation adjacent to the lake." There is no allegation of facts constituting negligence in the development of the lot.

The remaining allegations consist of negligence charged in failing to object to the location of the house on the lot and general allegations of failure to warn about "defects."

We determine that the trial court was correct in sustaining Hockenberger's demurrer insofar as the petition did not state a cause of action in negligence against Hockenberger.

With regard to the allegations against the Ainsworths for negligence, the petition alleges that the Ainsworths were negligent "[i]n designing, constructing, and selling the Plaintiff's [sic] house at its present grade elevation adjacent to

said lake . . . ." As in the case of the allegations against Hockenberger, these conclusory statements do not set out any facts constituting negligence. There are no specific allegations of fact that the Ainsworths themselves designed or constructed the home, and the selling of the home cannot be considered an act of negligence. Neither this allegation against the Ainsworths nor the subsequent general allegations of failure to warn or inspect are allegations of negligence.

The trial court was correct in determining that no cause of action in negligence was pled against Ainsworths.

## IMPLIED WARRANTY

With regard to Bernsteins' cause of action against Hockenberger based on implied warranty, we note again that Hockenberger sold a vacant lot to Ainsworths. Bernsteins equate the implied warranty that some courts have held exists between the builder of a house and the buyer of that house to the sale of a lot to a buyer who contracts with another to build a house on the lot. Nebraska has adopted the builder-vendor rule in *Henggeler v. Jindra*, 191 Neb. 317, 214 N.W.2d 925 (1974). In the *Henggeler* case we held "As a general rule a contractor constructing a building impliedly warrants that the building will be erected in a workmanlike manner and in accordance with good usage and accepted practices in the community in which the work is done." *Id*. at 319, 214 N.W.2d at 926. In the *Henggeler* case there was a construction defect. In the case at bar there is no factual allegation of a construction defect, nor is a latent defect alleged in the vacant lot as sold by Hockenberger. In that situation we adopt the reasoning of the South Carolina court in *Lane v. Trenholm Building Company*, 267 S.C. 497, 229 S.E.2d 728 (1976), which differentiated between the sale of a house and the sale of a vacant lot. In *Lane* at 501-02, 229 S.E.2d at 730, the court states:

> When land is conveyed, there is often no clearly defined objective in the transfer and it would be impossible to imply a warranty of fitness for any purpose. Even when a particular purpose is contemplated, as, for example, by restrictive covenants, the suitability of the land may depend on architectural proposals or other matters

entirely independent of the conveyance. Finally, the purchaser can fully inspect undeveloped land and, therefore, when the law denies the purchaser of real estate the benefit of an implied warranty, the consequences are generally not unfair or unjust.

The same factual considerations control this case. The vacant lot was sold by Hockenberger. It is not alleged that the precise use of the lot—as to location of the building on the lot or the type of building—was controlled by Hockenberger. There is a passing reference in the petition to protective covenants, but the pleadings do not set out what those covenants provided nor how compliance with the covenants would have avoided Bernsteins' damages.

The trial court correctly sustained Hockenberger's demurrer as directed to Bernsteins' cause of action based on implied warranty.

Insofar as Bernsteins' petition alleges a cause of action based on implied warranty against Ainsworths, again we note that it is not alleged that Ainsworths built the house. The petition alleges that the Ainsworths "caused to be built thereupon [on such lot] a house." The allegations do not set out the circumstances of the building of the house nor Ainsworths' role in that building. The petition clearly sets out that Hockenberger was engaged in the business of selling lots, but there is no allegation that the Ainsworths are engaged in building and selling houses.

As set out above with regard to strict liability against Ainsworths, the petition does not state whether this was a pure business transaction or the sale of a personal residence by Ainsworths. We decline to hold in this case that every seller of a residence gives an implied warranty as to that residence.

The implied warranty in connection with the construction of a building, as discussed in *Henggeler v. Jindra, supra,* is not applicable to the sale of the building by the owner who is not the builder. The trial court correctly sustained Ainsworths' demurrer as to the implied warranty theory of recovery against Ainsworths.

In view of our determination that facts sufficient to constitute a cause of action were not pled in Bernsteins' petition, it is not necessary to discuss the further grounds of

Hockenberger's demurrer.

The actions of the trial court in sustaining the demurrers of both Hockenberger and the Ainsworths were correct, and those trial court rulings are affirmed.

AFFIRMED.