632 S.E.2d 854

Theodore H. KIRKMAN and Karen K. Kirkman, Petitioners,

v.

PAREX, INC., Francis Coaxum, d/b/a Coaxum Stucco, R.E. Miller, Miller Housing, Inc., Miller Development Group, and First Union National Bank of South Carolina, Defendants,

of which First Union National Bank of South Carolina is Respondent.

No. 26180.

Supreme Court of South Carolina.

Heard Feb. 2, 2006.

Decided July 3, 2006.

478

John D. Kassel, Theile Branham McVey, and William D. Robertson, III, all of Columbia, for Petitioners.

Thomas E. Lydon, of McAngus Goudelock & Courie, L.L.C., of Columbia, for Respondent.

Justice PLEICONES:

We granted a writ of certiorari to review *Kirkman v. Parex, Inc.*, 356 S.C. 525, 590 S.E.2d 36 (Ct.App.2003), in which the Court of Appeals affirmed the circuit court's grant of summary judgment to Respondent First Union National Bank of South Carolina (First Union). The Court of Appeals held that, as a matter of law, First Union did not impliedly warrant the habitability of the house that it sold to Petitioners Theodore and Karen Kirkman (the Kirkmans), and therefore could not be liable for breach of warranty. We reverse the Court of Appeals' decision and remand the case to the circuit court.

## FACTS

The Kirkmans and Miller Housing Corporation (Miller Housing) executed a contract for the sale and purchase of a house. First Union, which financed Miller Housing's construction of the house,[1] was listed in the contract "as principal lien holder."

When the contract was executed, Miller Housing was experiencing financial problems, and First Union was contemplating foreclosure. The parties agreed that First Union would not foreclose on the property and that Miller Housing's debt would be satisfied by the Kirkmans' payment at closing. It later became apparent that foreclosure was necessary because of junior liens on the property, which would not have been satisfied by the Kirkmans' payment. Consequently, the parties amended the sales contract by omitting the provision barring foreclosure. First Union then foreclosed and took title to the property.

---

1. The construction loan actually came from South Carolina Federal Savings Bank, which was later acquired by First Union. For ease of discussion, we refer to the banks collectively as "First Union."

The contract also included a clause requiring Miller Housing to complete the house prior to closing. Unfortunately, Miller Housing's financial troubles caused it to go out of business, and it never completed the house.

First Union, then the owner of the house, hired another contractor to finish the project. There is evidence in the record that First Union's contractor finished the heating and air systems and all of the hardwood floors; sub-contracted out some plumbing work; installed light fixtures and appliances; fixed the sheetrock walls; and painted at least some of the interior of the house. It is undisputed, however, that First Union's contractor did not install the artificial stucco which the Kirkmans claim was defective and rendered the house unhabitable. Miller Housing had already performed that task.

Neither party has been able to locate any records showing the amount of money that First Union paid to the new contractor. The only evidence comes from an employee of the contractor, who testified in his deposition that the work described above was performed and that it took a month and a half to two months to do it. His best guess was that his company charged First Union between forty and fifty thousand dollars. The First Union employee who was involved in the project testified in his deposition that he "would not be able to deny" that First Union spent that much money to complete the house.

After its contractor completed the house, First Union deeded the property to the Kirkmans. In addition to the usual conveyance language and description of the property, the deed provided that First Union disclaimed the implied warranty of habitability and that the property was sold as-is. According to the Kirkmans, they were unaware that the deed included the disclaimer and did not believe they were purchasing the house as-is.

When the Kirkmans tried to sell the property years later, they spent approximately forty-five thousand dollars to repair the artificial stucco on the exterior of the house. They then brought this action, alleging that First Union, as the seller of the property, breached the implied warranty of habitability.

Both parties moved for summary judgment, and the circuit court granted it to First Union, finding as a matter of law that

First Union was a "mere lender" and therefore did not impliedly warrant the habitability of the house. The Court of Appeals affirmed.

## ISSUES

I. Whether the Court of Appeals erred in affirming the grant of summary judgment on the ground that First Union was a "mere lender."

II. Whether the record contains an additional sustaining ground: that First Union effectively disclaimed the implied warranty of habitability.

## STANDARD OF REVIEW

In reviewing a grant of summary judgment, an appellate court applies the same standard as the circuit court: summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *Osborne v. Adams*, 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001). "In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party." *Osborne*, 346 S.C. at 7, 550 S.E.2d at 321.

## ANALYSIS

Under the doctrine of *caveat venditor*, the seller of a new house impliedly warrants the habitability of the house. *Arvai v. Shaw*, 289 S.C. 161, 345 S.E.2d 715 (1986) (holding that the warranty is implied only in the initial sale, not in a resale); *Lane v. Trenholm Bldg. Co.*, 267 S.C. 497, 503, 229 S.E.2d 728, 730–31 (1976) (holding that, generally, the warranty is made by the seller even if he did not build the house); *Rutledge v. Dodenhoff*, 254 S.C. 407, 413–15, 175 S.E.2d 792, 795 (1970) (first recognizing the warranty). The seller's "liability is not founded upon fault, but because it has profited by receiving a fair price and, as between it and an innocent purchaser, the innocent purchaser should be protected from

latent defects." *Lane,* 267 S.C. at 503, 229 S.E.2d at 731. "[T]he warranty springs from the sale. The determining factor is not whether the defendant actually builds the defective house, but that he places it, by the initial sale, into the stream of commerce." *Arvai,* 289 S.C. at 164, 345 S.E.2d at 717.

 "[A] mere lender," however, "even if a party to the sale, is ordinarily not liable under an implied warranty of habitability theory." *Kennedy v. Columbia Lumber and Mfg. Co.,* 299 S.C. 335, 340, 384 S.E.2d 730, 734 (1989).

> This is not to say that a lender will never incur implied warranty liability when it makes a sale after default. Obviously, a lender can be held liable if it is also a developer.... Liability may also attach when the lender becomes highly involved with construction in a manner that is not normal commercial practice for a lender. In such a situation, the lender might be said to be a joint venturer. The lender may be liable if it is so amalgamated with the developer or builder so as to blur its legal distinction. A lender may also be liable where it forecloses on a developer in the midst of construction, takes title, has substantial involvement in completing the construction and sells homes.[2]

*Id.* at 340, 384 S.E.2d at 734 (citations omitted).

## I. Mere Lender

 The Court of Appeals held that First Union was a mere lender as a matter of law and therefore did not impliedly

---

**2.** We take this opportunity to re-visit the following passage from *Kennedy:*

> *Roundtree Villas* establishes liability on lenders for defects in those portions of the house(s) which they complete. A lender will also incur liability for the performance of express representations made to a buyer. A lender should be held responsible if it is aware of defects but conceals them from an unwitting buyer.

*Kennedy,* 299 S.C. at 340, 384 S.E.2d at 734 (parentheses in original) (internal citations omitted).

Under none of these scenarios would a lender expose itself to "implied warranty liability." First, a lender's liability "for defects in those portions of the house(s) which they complete" is unrelated to the implied warranty of habitability. As we specifically held in *Roundtree Villas Ass'n Inc. v. 4701 Kings Corp.,* such liability would be imposed under principles of tort law. 282 S.C. 415, 423, 321 S.E.2d 46, 50–51

warrant the habitability of the house purchased by the Kirkmans. We disagree.

It is clear that First Union was not a developer; that it was not in a joint venture with Miller Housing; and that it was not amalgamated with Miller Housing. It is equally clear, however, that First Union foreclosed before construction was complete, took title to the property, and sold the house to the Kirkmans. Contrary to the opinion of the Court of Appeals, there remains a genuine issue of material fact whether First Union was substantially involved in completing the construction. As stated above, there is evidence in the record that First Union's contractor finished the heating and air systems and all of the hardwood floors; sub-contracted out plumbing work; installed light fixtures and appliances; fixed the sheetrock walls; and painted some or all of the interior of the house.

The Court of Appeals focused on the Kirkmans' suggestion that the forty to fifty thousand dollars which First Union paid to complete the house was a substantial portion of the roughly two hundred and forty thousand dollars that constituted the total construction cost. The court opined that the Kirkmans were arguing that substantial involvement was "to be determined solely by a mathematical approach." *Kirkman*, 356 S.C. at 530–31, 590 S.E.2d at 39. That is not the Kirkmans' argument. They raise First Union's expenditure only to emphasize their thesis that all of the work performed by First Union's contractor over the course of two months was a substantial portion of the total work.

In addition, the Court of Appeals improperly relied on *Roundtree Villas* and the fact that First Union "was not involved in the installation of the [allegedly defective] stucco siding." *Kirkman*, 356 S.C. at 531, 590 S.E.2d at 39. As mentioned above in note 2, in *Roundtree Villas* we held that a lender could be liable for faulty construction with respect to those parts of the house on which it worked, but we specifically held that such liability would lie in tort, not contract. *See*

(1984). Second, by definition, an express representation does not constitute an implied warranty. Third, the implied warranty of habitability does not spring from a lender's engagement in fraudulent conduct; it springs from the sale of a new house.

282 S.C. at 423, 321 S.E.2d at 50–51. There was an issue in *Roundtree Villas* concerning a lender's warranty liability, but our discussion of it was very brief. We found that none of the defendants warranted the habitability of the house because none was a seller of the house. *Id.* at 423, 321 S.E.2d at 51; *see also Kennedy*, 299 S.C. at 340, 384 S.E.2d at 734 (discussing the limited warranty holding in *Roundtree Villas*).

In sum, there remains a genuine issue of material fact whether First Union was substantially involved in completing the house. If it was, then it impliedly warranted the habitability of the house, unless it effectively disclaimed the warranty.

## II. DISCLAIMER

As an additional sustaining ground, First Union argues that the grant of summary judgment should be affirmed because First Union disclaimed the implied warranty of habitability. Whether the warranty can be disclaimed is a novel issue in South Carolina.

We agree with the Supreme Court of Alabama "that the principle of freedom of contract permits a party to effectively disclaim the implied warranty of habitability." *Turner v. Westhampton Court, L.L.C.*, 903 So.2d 82, 93 (Ala.2004). To maintain the protection of purchasers, however, disclaimer can be permitted only if strict conditions are satisfied. We adopt the requirements set forth by the Washington Court of Appeals: the disclaimer "must be (1) conspicuous, (2) known to the buyer, and (3) specifically bargained for." *Burbo v. Harley C. Douglass, Inc.*, 125 Wash.App. 684, 106 P.3d 258, 263 (2005). This standard is to be applied strictly and will be met only in rare circumstances. It will protect buyers but also give them freedom to purposefully bargain for a price discount or other desired benefit. Denying buyers that freedom would be unduly paternalistic.

In this case, the disclaiming language within the four corners of the deed does not, standing alone, lead to the conclusion that the standard we adopt was satisfied. The circuit court needs to consider all relevant evidence in determining this issue.

486

## CONCLUSION

We reverse the grant of summary judgment to First Union and remand the case to the circuit court. On remand, the following issues must be determined by the fact finder: whether First Union was substantially involved in completing the house sold to the Kirkmans; and whether First Union effectively disclaimed the implied warranty of habitability. If First Union was so involved and did not effectively disclaim the warranty, then whether First Union breached the warranty will need to be determined.

**REVERSED AND REMANDED.**

TOAL, C.J., MOORE, J., and Acting Justices JAMES W. JOHNSON, JR. and WILLIAM P. KEESLEY, concur.