0892

Juanita B. WILHOIT, Respondent v. WCSC, INC., and Lawrence Aaron, Appellants.

(358 S. E. (2d) 397)

Court of Appeals

*Thomas S. Tisdale, Jr.,* and *Carol B. Ervin,* both of *Young, Clement, Rivers & Tisdale,* Charleston, *for appellants.*

*James H. Abrams, Jr.,* of *Pretty Man & Abrams,* Summerville, *for respondent.*

Heard Dec. 15, 1986.

Decided March 2, 1987.

GARDNER, Judge:

Juanita Wilhoit (Wilhoit) sued WCSC, Inc., and Lawrence Aaron (the appellants) for defamation; the jury returned a verdict of $1 actual damages and $45,000 punitive damages. We affirm.

Only a brief review of the facts is necessary. Wilhoit testified as a character witness for Barbara Koester, who pleaded guilty to bank embezzlement. After Wilhoit testified, she was approached by Aaron, a reporter for WCSC; Wilhoit testified that though she told Aaron she was not Barbara Koester, Aaron had a cameraman film her. While she was being filmed, Wilhoit covered her face with her hands. That night WCSC aired the film simultaneously with the story about Barbara Koester's sentencing. The broadcast was shown five times by WCSC.

Wilhoit is an independent real estate broker.

Wilhoit offered no testimony as to the net worth of either defendant.

By way of preface to the issues presented by this case, we observe that the U. S. Supreme Court, in interpreting First Amendment impact on libel and slander cases, has held that in cases against mass media defendants, a public official cannot recover damages for defamatory falsehood unless he proves by clear and convincing evidence that the false statement was made with actual malice — that is, with knowledge that it was false or with reckless disregard of whether it was false or not. *New York Times Co. v. Sullivan,* 376 U. S. 254, 84 S. Ct. 710, 11 L. Ed. (2d) 686 (1964). Later, this same principle was extended in similar cases to public persons.

*Curtis Publishing Co. v. Butts*, 388 U. S. 130, 87 S. Ct. 1975, 18 L. Ed. (2d) 1094 (1967). Later, in the case of *Gertz v. Robert Welch, Inc.*, 418 U. S. 323, 94 S. Ct. 2997, 41 L. Ed. (2d) 789 (1974), the United States Supreme Court laid down the rule that a private individual may not recover presumed or punitive damages against a mass media defendant without a showing of actual malice as herein defined; the standard of proof, the court held, is clear and convincing.

We address the issues of merit sequentially as presented.

First, the appellants argue that since the alleged defamation consisted of a film clip of Wilhoit with her face shielded by her hands, shown simultaneously with the broadcast which did not mention Wilhoit's name, the trial judge erred in denying their motion for directed verdict and post-trial motions on the grounds (1) that the broadcast was not of and concerning Wilhoit and (2) that Wilhoit failed to offer any evidence that a third party understood the broadcast to refer to her (Wilhoit).

We first address whether Wilhoit could have been recognized from the film clip. This court has reviewed a video tape of the broadcast. We hold that whether the picture revealed Wilhoit to the extent that she could have been recognized by some one or more of the viewing audience was a question of fact for the jury, who saw and heard a video tape of the broadcast. The jury found against the appellants on this issue. We hold that there is of record sufficient evidence to support this finding of fact by the jury.

Whether the broadcast was of and concerning Wilhoit raises a novel issue in this state. The theory of Wilhoit's case is that by the association of her picture with the accompanying broadcast of the news report of Koester's pleading guilty to embezzlement there was an implication that Wilhoit was an embezzler. The general rule applicable in situations as the one before us is stated in 50 Am. Jur. (2d), *Libel and Slander*, Section 24 (1970); we quote:

> [I]t is generally held that the publication of a person's portrait accompanied by the name of another, or not accompanied by any name, in connection with an article *which refers to the photograph and is defamatory*, enti-

tles the person whose portrait is so published to maintain an action for libel. In such a case, the publication of the plaintiff's portrait sufficiently identifies him as the subject of the accompanying text. (Emphasis added.)

From our reading and study, we think the applicable law is well set forth in the West Virginia case of *Crump v. Beckley Newspapers, Inc.*, 320 S. E. (2d) 70 (W. Va. 1984); we quote:

Turning to the facts surrounding the present case, it is well established that although libel is generally perpetrated by written communication, it also includes defamation through the publication of pictures or photographs. *See Burton v. Crowell Pub. Co.*, 82 F. (2d) 154 (2d Cr. 1936); *Thayer v. Worcester Post Co.*, 284 Mass. 160, 187 N. E. 292 (1933); *Dunlop v. Dunlop Rubber Co.*, 1 Ir.Rep. 280 (1920); *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190, 50 S. E. 68 (1904); *Morrison v. Smith*, 177 N. Y. 366, 69 N. E. 725 (1904); *De Sando v. New York Herald Co.*, 88 A. D. 492, 85 N. Y. S. 111 (1903); *DuBost v. Beresford*, 2 Camp. 511, 170 Eng. Rep. 1235 (1810).

In *Wandt v. Hearst's Chicago American*, 129 Wis. 419, 109 N. W. 70 (1906), the defendant newspaper published an article accusing a certain person of being a "suicide fiend," mistakenly accompanied by a photograph of the plaintiff. The Supreme Court of Wisconsin held that, even though the name of the person referred to as a "suicide fiend" was given, the juxtaposition of the plaintiff's photograph with the article, was, in effect, a statement that the plaintiff was a "suicide fiend." 129 Wis. at 421, 109 N. W. at 71.

In *Peck v. Tribune Co.*, 214 U. S. 185, 29 S. Ct. 554, 53 L. Ed. 960 (1909), the plaintiff's picture was published by the defendant accompanied by a caption which read, "Nurse and Patients Praise Duffy's — Mrs. A. Schuman, One of Chicago's Most Capable and Experienced Nurses, Pays an Eloquent Tribute to the Great Invigorating, Life-Giving and Curative Properties of Duffy's Pure Malt Whiskey ...," followed by an endorsement which read, "After years of constant use of your Pure Malt Whiskey, both by myself and as given to

patients in my capacity as nurse, I have no hesitation in recommending it as the very best tonic and stimulant for all weak and rundown conditions. . . ." The plaintiff "was not Mrs. Schuman, was not a nurse, and was a total abstainer from whiskey and all spirituous liquors." 214 U. S. at 188, 29 S. Ct. at 555, 53 L. Ed. at 962. In an opinion by Justice Holmes, the United States Supreme Court reversed the granting of a directed verdict for the defendant by the trial court, and held that the plaintiff was entitled to prove her case and have the issue of whether the unauthorized use of her picture was libelous go to the jury. 214 U. S. at 190, 29 S. Ct. at 556, 53 L. Ed. at 963.

As noted previously, this Court has recognized that defamation may be accomplished through inference, implication, inuendo or insinuation, as well as through direct reference. In Syllabus Point 4 of *Neal v. Huntington Pub. Co., supra* [159 W. Va. 556, 223 S. E. (2d) 792 (1976)], this Court stated, "Whether a written defamatory statement refers to a particular plaintiff, normally, is a question of fact for a jury." *As the Wandt and Peck cases demonstrate, even if the alleged defamatory material refers to another, if the implication is one of identity, the plaintiff may recover.* Although it does not appear in the present case that the article involved in any way implied that the plaintiff had experienced any of the types of harassment described therein, her allegations, supported by affidavit, were sufficient to raise a genuine issue of material fact for jury consideration.

While our Supreme Court has not directly addressed this particular point of television libel/slander, it has in related language held that any words which distinctly assume or imply plaintiff's guilt or raise a strong presumption of it in the minds of the hearers are sufficient to submit the issue of libel or slander to the jury trying the case. *Flowers v. Price,* 192 S. C. 373, 6 S. E. (2d) 750 (1940).

For the reasons stated, we adopt as the law of this state the rule of law set forth in *Crump v. Beckley Newspapers, Inc., supra;* the issue of whether the broadcast was of or about Wilhoit was properly submitted to the jury and we so hold.

The appellants then argue the question of publication and its requirement that a third party understood the broadcast to refer to Wilhoit. While there is direct evidence of record that some people did recognize the picture as a picture of Wilhoit, there is no testimony of record by a third party that he understood the broadcast to refer to Wilhoit. The question, however, of publication can be submitted to a jury upon circumstantial evidence that a third party could have heard the defamatory remarks and understood them to refer to the plaintiff. *Duckworth v. First National Bank*, 254 S. C. 563, 176 S. E. (2d) 297 (1970). The fact that the broadcast was made five times through the mass medium of television is sufficient evidence to support the jury's finding that there was a publication to a third party, and we so hold.

Now we turn to the issue of presumed damages. Wilhoit proved no special damages and relied upon the proposition that the broadcast was libelous per se. Appellants argue that the broadcast was libelous per quod, rather than libelous per se. As our Supreme Court stated in *Capps v. Watts*, 271 S. C. 276, 246 S. E. (2d) 606 (1978), the law of this state does not require the pleading of special damages simply because the publication is libelous per quod. The test of whether special damages must be pled and proved is whether the law can presume that the libelous publication occasioned general damages, *Id.* In determining whether a publication supports a presumption of general damages, the court looks to the inference of hurt which arises from publication as established by the general consent of men. *Id.* In this case, it is reasonable to presume that the television broadcast injured Wilhoit's reputation, since the jury necessarily found the appellants had falsely implied that she committed a crime. Where there is a false imputation of criminal conduct, general damages are presumed to result by inference of law and are not required to be proved by evidence. *Duncan v. Record Publishing Co.*, 145 S. C. 196, 143 S. E. 31 (1928). We therefore hold that there was evidence of record to support the award of actual damages.

And we find no merit to the appellants' contention that the trial judge erred in failing to hold that Wilhoit was a public figure. We find no authority to

support the proposition that a character witness for a defendant in a criminal case becomes a public figure as these words are used in libel and slander cases.

The appellants also argue that the trial judge failed to charge the jury the standard of proof required where punitive damages are awarded, i.e., that actual malice must be proved by clear and convincing evidence. The trial judge did define actual malice but failed to charge that for presumed or punitive damages the standard of proof is by clear and convincing evidence. The issue, however, was not properly preserved by appellants; they did not object to the failure by the trial judge to instruct the jury that evidence of actual malice must be proved by clear and convincing evidence[1] nor did they make an applicable exception. The issue was argued for the first time in appellants' brief. It was not properly preserved for appeal, and we so hold. *Vause v. Mikell*, 290 S. C. 65, 348 S. E. (2d) 187 (Ct. App. 1986).

Lastly, the appellants argue that the award of punitive damages was excessive; they argue that the verdict was so excessive as to indicate that the jury was motivated by caprice, passion or prejudice and for this reason, the verdict must be set aside; they also argue that because there was no testimony of their net worth, there was no basis for the punitive damages award.

Our Supreme Court, speaking through Justice Legge, in the case of *Rogers v. Florence Printing Co.*, 233 S. C. 567, 106 S. E. (2d) 258 (1958), spoke to this issue thusly:

> Finally, with regard to the alleged excessiveness of the verdict, appellant contends that absence of proof of its wealth impels the conclusion that the award of $20,000 punitive damages resulted from caprice, passion or prejudice, and that a new trial should therefore be granted. In *Charles v. Texas Company*, 199 S. C. 156, 18 S. E. (2d) 719 [1942], it was held that while the financial worth of a defendant was a fact properly to be considered by the jury in its determination of the amount to be awarded

---

[1] *See* Section 15-27-100, Code of Laws of South Carolina (1976), repealed by 1985 S. C. Act No. 100, effective July 1, 1985, now embodied in Rule 51, SCRCP.

by way of punitive damages, evidence of such worth was not requisite to such award. We also said there that, since information as to his worth was a matter peculiarly within the defendant's possession, he should not be heard to complain that the jury made its award without such information, where he himself testified and did not offer it. Appellant, having asked that we review that decision, argues that evidence of a defendant's wealth is bound to prejudice his cause; that he should not be compelled, at his peril, to prove his poverty; and that he should not be presumed wealthy unless the record so warrants. But, despite these arguments, we adhere to the principles stated in the *Charles* case to which we have just referred. Factors other than the defendant's ability to respond to the judgment necessarily enter into the determination of a proper award of punitive damages; in actions such as the present one, for example, the nature of the libel, the extent of the publication, and other circumstances, apparent from the evidence, that may indicate aggravation or suggest mitigation. No precise formula for their measurement being possible, it seems to us that under our system of jurisprudence the rights of both parties are best protected by leaving it to the jury, under proper instructions as to the governing principles of law, to arrive at a fair award of such damages whether or not evidence be offered as to the defendant's financial worth. If their verdict seem [sic] overliberal, the trial judge has discretionary power to reduce it; if it appear [sic] so excessive as to indicate that it was the result of caprice, passion or prejudice, both the trial judge and this court are under duty to set it aside.

The trial judge overruled the post-judgment motions for a new trial absolute or a new trial nisi. The record contains evidence of flagrant misconduct on the part of appellants who, according to evidence of record, rudely photographed Wilhoit over her vehement objections and after she told them that she was not Barbara Koester. We find no abuse by

the trial judge in overruling the post-judgment motions; we affirm his decision.

For the reasons stated, the appealed judgment is affirmed.

Affirmed.

SANDERS, C. J., and SHAW, J., concur.