716 S.E.2d 316

Dana WINTERS and Daniella Winters, Appellants/Respondents,

v.

Joyce FIDDIE, C.W. Burbage, Barbara Daniels, and Prudential Carolina Real Estate, Respondents/Appellants.

No. 4884.

Court of Appeals of South Carolina.

Heard Nov. 3, 2010.

Decided Aug. 31, 2011.

630

632

634

Daniel E. Martin, of Charleston, for Appellant–Respondents.

Michael A. Scardato, of Charleston, and Michael Christopher Scarafile, of N. Charleston, for Respondent–Appellants.

WILLIAMS, J.

On appeal from the trial court, Dana and Daniella Winters (individually "Mr. Winters/Mrs. Winters," collectively "Buyers") contend the trial court erred on several grounds when it granted Joyce Fiddie, C.W. Burbage, (collectively "Sellers") and Barbara Daniels' ("Daniels") motion for a new trial absolute. On cross-appeal, Sellers and Daniels claim the trial

court committed reversible error when it (1) applied the Residential Property Condition Disclosure Act[1] ("the Act") to a non-residential transaction; (2) failed to grant Sellers' motion for a directed verdict; and (3) allowed Buyers to introduce a consent order issued by another state agency from a separate proceeding in violation of the South Carolina Rules of Evidence.

## FACTUAL/PROCEDURAL BACKGROUND

The underlying negligence action stems from the purchase of a piece of real estate located at 2105 South Live Oak Drive in Moncks Corner, South Carolina ("the Property"). At the time of the sale, the Property consisted of several small storage sheds, an unoccupied house, and a commercial block building. Sellers inherited the Property from their deceased mother in 1999. Sellers rented the house on the Property for several years before enlisting the services of Daniels, a real estate agent for Prudential Carolina, in an effort to sell it. When Daniels listed the Property, the house had been vacant for approximately one and a half years.

Daniels initially listed the Property for sale in March 2001 for $180,000. Due to little interest in the Property, Sellers relisted the Property on several occasions between March 2001 and October 2004. Sellers eventually sold the Property for $110,000 in November 2004 to Buyers.

Prior to Buyers closing on the Property, three prospective purchasers attempted to buy the Property from Sellers. The first buyer, Laura Shambrook, noticed some type of growth on the walls in the house. After a lab report dated September 4, 2004, confirmed the presence of mold, Ms. Shambrook attempted to purchase the Property for approximately $80,000. Ms. Shambrook showed the mold disclosure report to Daniels and Sellers in hopes they would lower their asking price; however, Sellers were unwilling to accept her offer, and the contract fell through.

Shortly thereafter, a second prospective buyer, Anna Oster, contacted Daniels about the Property. Daniels testified she disclosed the presence of mold to Ms. Oster when she showed

---

1. *See* S.C.Code Ann. §§ 27–50–10 to –110 (2007).

her the house and surrounding property, but Ms. Oster stated otherwise at trial. On September 14, 2004, Ms. Oster's real estate agent submitted an offer on a "Residential Agreement to Buy and Sell" form to purchase the Property for $125,000. During negotiations, Ms. Oster's agent also requested a residential disclosure form. Daniels never produced a residential disclosure form, but four days after receiving Ms. Oster's offer, Daniels faxed a copy of the mold report to Ms. Oster's agent. Daniels claimed the deal fell apart because the Sellers would not agree to the terms of Ms. Oster's offer; Ms. Oster, however, stated that once Daniels disclosed the presence of mold in the house, the negotiations ended.

During the same month, a third prospective purchaser, Edward Spence, attempted to purchase the Property for $110,000. On September 23, 2004, the parties entered into a "General Use And Lots/Acreage" contract. The contract contained no "as is" language and was contingent only upon Mr. Spence obtaining financing. A mold disclosure and waiver form was also attached to the contract, which Mr. Spence and Daniels signed on September 27, 2004. The parties never closed on the contract due to Mr. Spence's failure to obtain financing.

Following Mr. Spence's inability to obtain financing, Daniels told Mr. Winters about the Property because she knew Mr. Winters was looking for some commercial property. Buyers and Daniels had a pre-existing relationship at the time Buyers bought the Property because Daniels had recently sold Buyers their primary residence. Daniels showed Mr. Winters the Property, at which time Mr. Winters noticed what he called "dirty water" on the walls of several rooms in the house. However, Mr. Winters stated Daniels never mentioned the presence of mold in the house.

Buyers and Sellers subsequently entered into a "General Use And Lots/Acreage" contract for the purchase of the property for $110,000. Daniels prepared the contract and included language to convey the property "as is." Mr. Winters agreed the "as is" language was present when he signed the contract but claimed Daniels added the language, "[b]uyer acknowledges the presence of mold in the house," after he signed the contract, and he was unaware of this language until

the underlying suit was commenced. Daniels countered Mr. Winters' testimony at trial and stated she told Mr. Winters about the mold, but it was immaterial to him because he was going to tear down the house as soon as they closed on the Property. Mr. Winters testified no disclosures were made about the presence of mold at the closing. He stated he was unaware of its existence in the house until Ms. Oster, one of the prior prospective buyers, walked onto the Property one day and disclosed it to him while he was repairing the house.

Buyers filed suit against Sellers and Daniels for failure to disclose the presence of toxic mold in the house and for failure to provide Buyers with written reports in Sellers and Daniels' possession confirming the existence of toxic mold. Buyers additionally asserted Daniels breached certain sections in Title 40 based on her statutory duties to Buyer as a real estate broker. Buyers requested actual damages as well as $1.5 million in punitive damages. The case was tried before a jury on August 12 and 13, 2008.

Over Daniels' objection at trial, Buyers introduced a consent agreement between the South Carolina Labor, Licensing, and Regulations board and Daniels, which sanctioned Daniels for failing to disclose to Buyers "reports indicating the presence of structural defects and toxic mold ... [until] ... approximately one month after purchase." Daniels confirmed she did not provide Buyers with a copy of the mold disclosure report but stated she told Buyers about the presence of mold. Further, Daniels testified she attempted numerous times after she was sanctioned to contact Buyers in an effort to remediate the problem, but Buyers never returned her phone calls.

At the close of Buyers' case, Sellers made a motion for a directed verdict on several grounds, which the trial court denied. Sellers renewed their directed verdict motion after the close of evidence, which the court denied. The trial court then charged the jury on the law but neglected to charge the appropriate burden of proof for punitive damages. Neither party objected to the jury charges. The jury returned a verdict in favor of Buyers for $50,000 in actual damages and $75,000 in punitive damages.

Sellers timely filed a motion for JNOV, New Trial Absolute, or, in the alternative, New Trial Nisi Remittitur. Sellers

raised numerous grounds for granting a new trial, including the trial court's failure to charge the jury that the award of punitive damages requires clear and convincing proof. After a hearing on the motion, the trial court granted Sellers' motion for a new trial, finding it had the authority to grant a new trial absolute pursuant to Rule 59(d), SCRCP, despite Sellers' failure to timely object to the jury charge. Buyers' motion to reconsider was denied. Buyers appealed and Sellers cross-appealed.

## I. Buyers' Appeal

Buyers contend the trial court erred in granting Sellers a new trial absolute because Sellers failed to timely object to the trial court's flawed jury instruction. In response, Sellers claim their failure to timely object to the jury charge did not prevent the trial court from being able to grant a new trial pursuant to Rule 59, SCRCP.[2] We agree with Buyers.

■ The grant or denial of a new trial motion rests within the trial court's discretion, and its decision will not be disturbed on appeal unless the court's findings are wholly unsupported by the evidence or its conclusions are controlled by error of law. *Vinson v. Hartley*, 324 S.C. 389, 405, 477 S.E.2d 715, 723 (Ct.App.1996).

A trial court's authority to grant a new trial is rooted in Rule 59, SCRCP. Rule 59(a) permits a trial court to grant a new trial "to all or any of the parties and on all or part of the issues [ ] in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore

---

2. Sellers raised several other grounds in their motion for a new trial, including juror misconduct, improperly admitted evidence, the Thirteenth Juror Doctrine, and the failure of the punitive damages award to meet the constitutional requirements of *Gamble v. Stevenson*, 305 S.C. 104, 406 S.E.2d 350 (1991). On appeal, Sellers contend Buyers did not appeal these additional sustaining grounds, which renders them law of the case. However, the trial court never specifically ruled on Sellers' alternative grounds in its order; thus, law of the case is inapplicable, and Sellers' alternate grounds for a new trial are not properly before this court. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").

been granted in actions at law in the courts of the State. . . ." More specifically, Rule 59(d), SCRCP, states,

> Not later than 10 days after entry of judgment, the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party. After giving the parties notice and an opportunity to be heard on the matter, the court may grant a motion for a new trial, timely served, for a reason not stated in the motion. In either case, the court shall specify in the order the grounds therefor.

Rule 51, SCRCP, which pertains to jury instructions, states, "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds for his objection."

Rule 59 does not expressly address whether *a trial court's* ability to grant a new trial for "any reason" is limited to only grounds that were raised at trial. Moreover, while Rule 51 specifies that a jury instruction must be objected to, and case law affirms that a failure to timely object will preclude appellate review,[3] neither Rule 51 nor Rule 59 explicitly address whether a flawed jury instruction must be objected to for the trial court, either sua sponte or by a party's motion, to grant a new trial on that ground.

 South Carolina jurisprudence indicates that a moving party must raise the objectionable issue at the appropriate time during trial; thus, unobjected to trial error cannot be advanced as grounds for a new trial. *See State v. Dicapua,* 383 S.C. 394, 398–99, 680 S.E.2d 292, 294 (2009) (finding a trial court cannot sua sponte grant a new trial on a ground not raised by a party and reversing the trial court's grant of a new trial based on the admission of an unobjected to videotape); *S. Railway Co. v. Coltex, Inc.,* 285 S.C. 213, 216, 329 S.E.2d 736,

---

**3.** *See Belue v. City of Greenville,* 226 S.C. 192, 202–03, 84 S.E.2d 631, 636 (1954) (holding that the supreme court will not consider on appeal a contention regarding the trial court's jury instructions that was not raised at trial); *Wilhoit v. WCSC, Inc.,* 293 S.C. 34, 41, 358 S.E.2d 397, 401 (Ct.App.1987) (citing to Rule 51, SCRCP, and finding trial court's failure to charge that the standard of proof for punitive damages is by clear and convincing evidence was not properly preserved because appellant did not object to the trial court's error).

737–38 (1985) (finding party waived its right to claim an omitted jury charge was error by not objecting to its omission at the trial level and reversing the trial court's grant of a new trial on that ground); *Collins Cadillac, Inc. v. Bigelow–Sanford, Inc.*, 276 S.C. 465, 468, 279 S.E.2d 611, 612 (1981) (holding a party's failure to raise issue in directed verdict motion precluded assertion of issue in support of motion for new trial); *Brown v. Singletary*, 226 S.C. 482, 484, 85 S.E.2d 738, 738 (1955) (finding a party's failure to object to prejudicial remarks by the trial court during ruling on directed verdict motion prevented trial court from granting the party's motion for a new trial based on its prejudicial remarks); *Munn v. Asseff*, 226 S.C. 54, 58, 83 S.E.2d 642, 643–44 (1954) (holding failure to object or otherwise challenge a jury charge precluded issues from being raised in new trial motion to trial court or on appeal).

In the civil context, the Supreme Court has addressed a trial court's ability to order a new trial based upon inadequate jury instructions that were not specifically objected to at the trial level nor raised in the party's new trial motion in *Southern Railway Company v. Coltex, Inc.*, 285 S.C. 213, 329 S.E.2d 736 (1985).[4] In that case, Southern Railway brought an action against Coltex to recover money due for shipment and storage of Coltex's trailers. *Id.* at 214, 329 S.E.2d at 736. The trial court charged the jury that Southern Railway had a lien on the trailers in its possession, but this lien was waivable by the parties' agreement. *Id.* at 213–16, 329 S.E.2d at 736–37. Southern Railway objected to the trial court's charge that the lien was waivable, but the trial court overruled the objection, and the jury found for Coltex. *Id.* at 214–16, 329 S.E.2d at 737. Southern Railway then moved for a new trial based on the court's erroneous jury charge. *Id.* The trial court granted Southern Railway a new trial, not on the charge Southern Railway objected to, but on the court's failure to clarify in its

---

4. The Supreme Court recently reaffirmed the holding from *Southern Railway* in *State v. Dicapua*, 383 S.C. 394, 398–99, 680 S.E.2d 292, 294 (2009), asking "[M]ay a trial court in a criminal case sua sponte order a new trial on a ground not raised by a party? We answered this question 'no' in the context of a civil proceeding in *Southern Railway* . . . ."

jury charge what Coltex had to do to retain the benefit of the waived lien. *Id.* at 215, 329 S.E.2d at 737.

On appeal, the Supreme Court held that Southern Railway should have requested an additional charge regarding Coltex's duties to claim the benefit of the waived lien. *Id.* at 215–16, 329 S.E.2d at 737. In holding the trial court erred in granting Southern Railway a new trial, the Supreme Court stated, "Southern waived the right to claim the omitted charge was error by not objecting to its omission at the trial level. Therefore, the omitted charge was *not properly before the trial court,* the Court of Appeals, or this Court." *Id.* at 216, 329 S.E.2d at 737–38 (emphasis added).

■ In the instant case, the trial court failed to instruct the jury in regard to punitive damages that the burden of proof was by clear and convincing evidence. Neither party objected to this omission after the jury retired or before the jury returned the verdict. The first time Sellers argued the trial court erred in failing to charge the appropriate burden of proof was in Sellers' motion for a new trial. At the hearing on Sellers' new trial motion, the trial court stated, "[M]y standard jury charge on punitive damages specifically addresses that the standard of proof is clear and convincing. . . . I don't know how it didn't get in there." Both parties acknowledged the trial court permitted them to review the jury charges before the court read them, and while Sellers conceded they did not object, they also stated the clear and convincing language was included in the court's standard jury charge when they reviewed it.

In granting Sellers' new trial motion outside the ten-day window, the trial court cited to Rule 59(d) and stated, "Here, while it is true that the Defendants' objection to the jury charges is not preserved because of their failure to object prior to the jury retiring, my authority to grant a new trial absolute is based on my own ability to do so and does not hinge on the Defendants' motion . . . in the instant case, the Defendants should not suffer because of my administrative oversight. . . . "

Despite the trial court's good faith effort to correct its error by granting Sellers' motion, we are constrained by precedent to conclude the trial court erred in granting a new trial

absolute. Based on the supreme court's holding in *Southern Railway*, we find Sellers' failure to object to the omitted portion of the jury instruction precluded the trial court from granting a new trial on that ground. Accordingly, we reverse the trial court's grant of a new trial absolute.

## II. Sellers' Cross–Appeal

On cross-appeal, Sellers and Daniels claim the trial court committed reversible error when it (1) applied the Act to a non-residential transaction; (2) failed to grant Sellers' motion for a directed verdict; and (3) allowed Buyers to introduce a consent order issued by another state agency from a separate proceeding in violation of the South Carolina Rules of Evidence.

### 1) Residential Property Condition Disclosure Act

Sellers first claim the trial court erred in applying the Act to the sale of the Property because the abandoned house was not a "dwelling unit" within the meaning of the Act. We disagree.

The Act applies to transfers of residential real property consisting of at least one but not more than four dwelling units. S.C.Code Ann. § 27–50–20 (2007). Under the Act, the owner of the real property must furnish a written disclosure statement to a buyer disclosing certain characteristics and conditions of the property, including, among other things, the presence of toxic material and other environmental contamination. S.C.Code Ann. § 27–50–40 (2007). Failure to provide a buyer with an accurate disclosure statement may subject the owner and his or her real estate agent to civil liability. S.C.Code Ann. § 27–50–65 (2007).

While the Act does not define a "dwelling unit," Sellers argue the definition of a dwelling unit from the Residential Landlord Tenant Act ("RLTA"), which is located in the same title, should apply in this case. Under the RLTA, a dwelling unit is "a structure or the part of a structure that is used as a home, residence, or sleeping place by one person who maintains a household or by two or more persons who maintain a common household and includes landlord-owned mobile homes." S.C.Code Ann. § 27–40–210(3) (2007). We find it is

not unreasonable to resort to the definition of a dwelling unit from the RLTA because both chapters are located in Title 27. *See S.C. State Ports Auth. v. Jasper Cnty.*, 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006) ("In construing statutory language, the statute must be read as a whole and sections which are a part of the same general statutory law must be construed together and each one given effect.").

■ Regardless, even if we do not utilize the definition of dwelling unit as set forth in the RLTA, our conclusion is the same. When confronted with an undefined statutory term, this court must interpret it in accordance with its usual and customary meaning. *Branch v. City of Myrtle Beach*, 340 S.C. 405, 409–10, 532 S.E.2d 289, 292 (2000). According to Black's Law Dictionary, a "dwelling-house" is "the house or other structure in which a person lives; a residence or abode." Black's Law Dictionary (9th ed.2009). We find this definition is in accord with the term "dwelling unit" as defined in section 27–40–210.

Throughout trial, the parties disputed the intended use of the house and consequently if the Act should apply to the sale of the Property. Sellers testified it had been rented in prior years as a residence, but the house was vacant two years before the Property's sale. Sellers stated Buyers intended to tear down the house and erect a steel building in its place; whereas, Mr. Winters claimed he wanted to renovate the house. Both parties conceded the house was in disrepair and needed substantive repairs before it was suitable to be rented. Moreover, multiple contracts were submitted on the Property, some on residential forms and others on lot and acreage forms.

The conflicting nature of the evidence supports the trial court's finding that the nature of the property and the intended use for the house was a disputed issue to be resolved by the factfinder. If the jury determined the house was a dwelling unit, it was then within the jury's province to determine whether Sellers breached a duty to Buyers. *See Burnett v. Family Kingdom, Inc.*, 387 S.C. 183, 189, 691 S.E.2d 170, 173 (Ct.App.2010) (finding the question of negligence is a mixed question of law and fact, so that if the law recognizes a particular duty, the jury then determines whether a breach of

the duty that resulted in damages occurred). Accordingly, we conclude whether the house was a "dwelling unit" within the meaning of the Act was properly submitted to the jury. *See Ward v. Zelinski*, 260 S.C. 229, 234, 195 S.E.2d 385, 388 (1973) (finding when evidence is contradictory and more than one reasonable inference is possible, it is the trial court's duty to submit the disputed issues of fact to the jury).

## 2) Directed Verdict

Sellers next argue the trial court erred in denying their motion for a directed verdict on the following grounds: (1) Buyers only alleged negligence against Sellers but their relationship with Sellers sounded solely in contract; (2) Buyers failed to present any evidence that Burbage had any knowledge of mold in the house or that Fiddie knowingly violated any statutory provisions; and (3) Buyers failed to offer any evidence to support an award of actual damages. We disagree.

"In ruling on motions for directed verdict or judgment notwithstanding the verdict, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions." *Steinke v. S.C. Dep't of Labor, Licensing & Reg.*, 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999). The trial court must deny a directed verdict motion when the evidence yields more than one inference or its inference is in doubt. *Id.*

A motion for directed verdict goes to the entire case and may be granted only when the evidence raises no issue for the jury as to liability. *Carolina Home Builders, Inc. v. Armstrong Furnace Co.*, 259 S.C. 346, 358, 191 S.E.2d 774, 779 (1972). When considering directed verdict motions, neither the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence. *Harvey v. Strickland*, 350 S.C. 303, 308, 566 S.E.2d 529, 532 (2002). In deciding whether to grant or deny a directed verdict motion, the trial court is concerned only with the existence or nonexistence of evidence. *Pond Place Partners, Inc. v. Poole*, 351 S.C. 1, 15, 567 S.E.2d 881, 888 (Ct.App.2002).

■ This court will reverse only when there is no evidence to support the trial court's ruling or when the ruling is controlled by an error of law. *Clark v. S.C. Dep't of Public Safety*, 362 S.C. 377, 382–83, 608 S.E.2d 573, 576 (2005).

### (1) Sellers' Duty to Buyers

■ Sellers first contend any duty they had to Buyers was created solely by contract, and because Buyers only alleged negligence against Sellers, the trial court should have granted a directed verdict in Sellers' favor. We disagree.

The evidence presented at trial created more than one reasonable inference on the issue of liability. *See Carolina Home Builders*, 259 S.C. at 358, 191 S.E.2d at 779 (holding a directed verdict may be granted only when the evidence raises no issue for the jury as to liability). Buyers argued Sellers had both a statutory and common law duty to disclose material information pertaining to the sale of the Property. Buyers presented evidence that the purchase of the Property was a residential transaction subject to the statutory requirements set forth in the Act. While the dissent contends Buyers failed to sue Sellers under section 27–50–65 [5] of the Act, and their failure to do so precludes them from recovering damages they would have otherwise been entitled to, we construe Buyers' complaint as alleging a cause of action under section 27–50–65. *See Whale Branch Corp. v. Fed. Land Bank of Columbia*, 275 S.C. 218, 219, 268 S.E.2d 583, 584 (1980) ("In determining whether a cause of action is stated, we are required to construe the complaint liberally in favor of the pleader."). Specifically, Buyers alleged Sellers "fail[ed] to disclose the existence of toxic mold located within the dwelling [and] fail[ed] to provide [Buyers] with written reports within [Sellers and Daniel's] possession, which confirmed the existence of toxic mold...." Additionally, Buyers alleged Sellers "attempt[ed] to falsify documentation to disguise their failure to disclose evidence of toxic mold [and] fail[ed] to eliminate dangerous condition (sic) upon said property that [Sellers and Daniels] knew or should have known existed." Although

---

**5.** Section 27–50–65 permits recovery of actual damages, court costs, and attorney's fees against a seller who knowingly fails to disclose "any material information on the disclosure statement that he knows to be false, incomplete, or mislead...."

Buyers may not have specifically cited to the Act, we construe their complaint as sufficiently alleging a cause of action under the Act. Moreover, the parties argued over whether the Act applied throughout trial, and Sellers' only objection to the directed verdict motion was on Buyers' failure to allege a breach of contract action not failure to sue under the Act.

Furthermore, even if the jury determined Sellers breached no duty to Buyers under the Act, there was conflicting evidence as to whether the presence of mold was a patent or latent defect as well as whether Buyers exercised reasonable diligence in discovering the mold. Accordingly, the trial court properly denied Sellers' motion for a directed verdict.

### (2) Knowledge of Mold

Next, Sellers argue the trial court erred in denying their directed verdict motion because Buyers presented no evidence that Burbage had any knowledge of the presence of mold and that Fiddie knowingly failed to disclose the presence of mold. We disagree.

As to Burbage, there was evidence from which the jury could infer Burbage had either actual or constructive knowledge of the presence of mold. First, Burbage assigned a power of attorney to Fiddie, who signed the contract of sale, which Sellers claim expressly disclosed the presence of mold. Moreover, Burbage signed a previous contract with a prospective purchaser, which included a mold disclosure and waiver form. Given the deferential standard of review with regard to motions for directed verdict, we find Buyers presented sufficient evidence to create a jury question as to Burbage's constructive or actual knowledge regarding the presence of mold in the house. As to Fiddie, she testified she was aware of the presence of mold in the house. Because Fiddie admitted she knew about the mold, the trial court did not err in denying Sellers' motion for directed verdict on this ground.

### (3) Evidence of Damages

Sellers argue the trial court erred in denying their directed verdict motion based on Buyers' failure to produce any evidence to support an award of actual damages. We disagree.

In order for damages to be recoverable, the evidence should be sufficient to "enable the court or jury to determine the amount thereof with reasonable certainty or accuracy." *Whisenant v. James Island Corp.*, 277 S.C. 10, 13, 281 S.E.2d 794, 796 (1981). "While neither the existence, causation nor amount of damages can be left to conjecture, guess or speculation, proof with mathematical certainty of the amount of loss or damage is not required." *Id.* The evidence, however, should be such that a court or jury can reasonably determine an appropriate amount. *Gray v. S. Facilities, Inc.*, 256 S.C. 558, 570, 183 S.E.2d 438, 444 (1971). Moreover, bald allegations are insufficient to establish a claim for diminution in value, and the evidence must not be speculative as to the amount of the alleged diminution. *See Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 117, 410 S.E.2d 537, 546 (1991).

At trial, testimony was presented that the Property was initially appraised at $125,000 but was currently valued at $75,000 based on a county tax assessment. Mrs. Winters stated the $75,000 valuation did not take into account the presence of mold in the house. Mr. Winters stated they were continuing to pay a $900 monthly mortgage on the Property, which was partially offset by renting the other building on the Property for $600 per month. Mr. Winters claimed he would have rented the house for between $750 and $800 per month if not for the mold, which rendered the house uninhabitable.

The jury apparently awarded Buyers $50,000 in actual damages based on the difference between the bank's pre-purchase appraisal of the Property at $125,000 and the county's subsequent tax assessment of the Property at $75,000. The tax assessment is not necessarily conclusive on the Property's depreciated value, particularly when Mrs. Winters stated the assessment did not account for the presence of mold in the house. However, Mrs. Winters testified the Property was worth $75,000 and supported her conclusion based on the tax assessment and their loss of projected rental income. As the co-owner of the Property, her testimony is sufficient to support the jury's verdict.[6] *See Gauld v. O'Shaugnessy Realty*

---

6. The dissent states other motions were pending before the trial court when the court granted Sellers' new trial motion, and because this court has now reversed the trial court's grant of a new trial, the trial

*Co.,* 380 S.C. 548, 560, 671 S.E.2d 79, 86 (Ct.App.2008) ("As a general principle, a landowner who is familiar with her property and its value, is allowed to give her estimate as to the value of the land and damage thereto, even though she is not an expert.") (internal citation omitted).

### 3) Admission of Consent Agreement

Last, Sellers contend the trial court erred in admitting a consent order issued by South Carolina Labor, Licensing, and Regulations board ("LLR") in violation of Rules 403 and 404, SCRE.[7] We disagree.

The admission of evidence is within the trial court's discretion, and its decision will not be reversed absent an abuse of discretion. *Whaley v. CSX Transp., Inc.,* 362 S.C. 456, 483, 609 S.E.2d 286, 300 (2005).

Daniels signed a consent agreement with LLR, which stated, "[Daniels] admits that she failed to disclose to purchasers

---

court must review the punitive damages award for compliance with due process. We first note the trial court never conducted nor did Sellers object at the close of trial to the lack of a post-verdict judicial review of the punitive damages award as required by *Mitchell v. Fortis Insurance Company,* 385 S.C. 570, 588–89, 686 S.E.2d 176, 185–86 (2009). While we find Sellers' alternative requests for a new trial nisi remittitur and JNOV based on lack of evidence and the excessiveness of the punitive damages award would have sufficiently preserved the punitive damages issue for appeal to this court, they failed to raise this issue on appeal. In their post-trial motion, Sellers explicitly objected to the trial court's failure to grant a directed verdict due to the lack of evidence to support an award of actual damages as well as an award of punitive damages but only raised this issue in the context of actual damages on appeal. We agree with the dissent's conclusion that requiring a prevailing party to request a ruling on alternative grounds from the trial court when the court has ruled in its favor would be "inefficient and pointless." However, this does not obviate the need for Sellers to raise any issue it has with the award of punitive damages (because it was an adverse ruling) to this court on cross-appeal. Accordingly, we find it improper for either this court or the trial court to review the punitive damages award.

7. While Sellers also reference Rule 408, SCRE, in their brief on appeal, this argument was not made to the trial court and is not preserved for our review. *See Wilder,* 330 S.C. at 76, 497 S.E.2d at 733 (an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved for appellate review).

of said property reports indicating the presence of structural defects and toxic mold at said property. [Daniels] presented toxic mold disclosure statements to purchasers approximately one month after purchase." Daniels also agreed in the order to remediate and repair the mold conditions within thirty days of signing the agreement. The trial court ruled in limine the order could only be admitted for impeachment purposes. During Daniels' testimony, the trial court ruled the order was also relevant on the issue of punitive damages. The order was then admitted into evidence over Sellers' objection.

Pursuant to Rule 403, SCRE, relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, SCRE.

We conclude the order was admissible under Rule 403, SCRE, because it was evidence of whether Daniels knowingly failed to disclose the mold report to Buyers. Because Buyers alleged they would not have bought the property if they had this information, Daniels' disclosure or lack thereof was relevant to Buyers' theory of negligence. While a third party may have instituted the LLR complaint against Daniels, the provision relating to the disclosure of the mold reports clearly pertained to Buyers. Moreover, Mrs. Winters' testimony reaffirmed the order's finding that Daniels asked Mrs. Winters to sign the mold disclosure waiver form one month after closing on the Property. While the LLR order was prejudicial to Daniels in that it established Daniels' wrongdoing towards Buyers, we find its probative value outweighed its prejudicial impact.

We also disagree with Sellers' contention that the order was inadmissible under Rule 404, SCRE.

Under Rule 404(b), "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent." Rule 404(b), SCRE.

 "The law in civil cases, as well as in criminal cases, permits proof of acts other than the one charged which are so related in character, time and place of commission as to ... tend to show the existence of [ ] a common plan or system." *Citizens Bank of Darlington v. McDonald*, 202 S.C. 244, 262–63, 24 S.E.2d 369, 376 (1943) (internal citations omitted). In the case of the common scheme or plan exception to the general rule barring admission of prior bad act evidence, a close degree of similarity between the prior bad act and the present case is necessary. *Judy v. Judy*, 384 S.C. 634, 642, 682 S.E.2d 836, 840 (Ct.App.2009). Prior bad act evidence is admissible where the evidence is of such a close similarity to the charged offense that the previous act enhances the probative value of the evidence so as to outweigh the prejudicial effect. *Id.*

 We find the facts giving rise to LLR's order and those in the instant case were extremely similar, so that the order's probative value outweighed its prejudicial effect. In both instances, Daniels was accused of failing to disclose the mold report to Buyers. Both the order and the case against Sellers involved the same property and the same transaction. Although the order also sanctioned Daniels for her failure to have contract changes initialed with Ms. Oster, who was not a party to this suit, Sellers did not try to introduce the order for that purpose at trial. Moreover, Daniels stated that particular finding was in error because that provision did not apply to Buyers' contract, which Sellers did not contest. Despite that slight factual distinction, we do not believe the differences constitute such a meaningful distinction that the trial court's admission of the prior LLR order into evidence constituted an abuse of discretion. *See Judy*, 384 S.C. at 643, 682 S.E.2d at 840–41 (finding trial court properly admitted prior judgment under Rule 404(b) based on common scheme or plan when the dispute involved same property and allegations but differed in that defendant was involved with one party in first dispute and another party in second dispute).

## CONCLUSION

For the foregoing reasons, the trial court's decision to grant a new trial absolute is **REVERSED**. Sellers' cross-appeal

issues are **AFFIRMED,** and the jury's verdict is **REINSTAT-ED** in accordance with this opinion.

### AFFIRMED IN PART and REVERSED IN PART.

SHORT, J., concurs.

FEW, C.J. concurring in part and dissenting in part:

I concur in the majority opinion except in two respects. First, I would reverse the trial court's decision not to direct a verdict in favor of Sellers. Second, I would remand the case to the circuit court to conduct a post-trial review of punitive damages and to consider other pending post-trial motions.

Buyers alleged only one theory of recovery: negligence. Because Sellers owed no duty of due care to Buyers, Sellers' motion for a directed verdict should have been granted. Buyers did not allege an action against Sellers under the Residential Property Condition Disclosure Act.[8] Had they done so, and had they proven the requisite conduct on the part of Sellers under section 27–50–65 of the South Carolina Code (2007), they would have been entitled to recover damages. They chose, however, to sue in negligence, and thus they are foreclosed from recovery.

Historically, a seller of real estate could not be liable to a buyer in negligence. *See Rutledge v. Dodenhoff,* 254 S.C. 407, 412, 175 S.E.2d 792, 794 (1970) ("The doctrine of *caveat emptor* . . . has, in the absence of fraud and misrepresentation long governed the obligations of the parties in the sale of real estate in this State."). Under this rule of law, a seller could be liable for making a fraudulent statement about the property but could not be liable for negligent failure to disclose a latent defect. Our courts have gradually moved away from this doctrine in specific situations. *See, e.g., Rogers v. Scyphers,* 251 S.C. 128, 134, 161 S.E.2d 81, 84 (1968) (imposing a duty of due care upon builder-vendor of new homes); *Rutledge,* 254 S.C. at 414, 175 S.E.2d at 795 (recognizing a right of

---

8. The majority interprets the complaint to allege an action under the Act. Our disagreement over the interpretation of the complaint is not significant, however, because the only claim presented to the jury was a claim for negligence. While the trial judge explained various sections of the Act to the jury, he did so only in the context of Buyers' claim for negligence.

recovery for breach of warranty for the sale of a new house by a builder-vendor); *Lane v. Trenholm Bldg. Co.*, 267 S.C. 497, 500, 229 S.E.2d 728, 729 (1976) (holding an implied warranty of fitness for its intended use arises from the sale of a new building). However, no decision of our appellate courts imposes a duty of due care upon a seller of residential property who is not in the business of building or selling homes. While the Residential Property Condition Disclosure Act imposes a duty on a seller of residential property to disclose to buyers environmental conditions such as the existence of mold, this duty is not in negligence. In order to recover damages for the breach of this statutory duty of disclosure, a plaintiff must prove more than negligence on the part of the seller. Such a plaintiff must prove the seller knew of the mold and knowingly failed to disclose it. *See* S.C.Code Ann. § 27–50–65 (2007) ("An owner who *knowingly violates or fails to perform any duty* prescribed by any provision of this article or who discloses any material information on the disclosure statement that he *knows to be false, incomplete, or misleading* is liable for actual damages proximately caused to the purchaser and court costs." (emphasis added)); S.C.Code Ann. § 27–50–40(C) (2007) ("The rights of the parties to a real estate contract in connection with conditions of the property of which the owner has no actual or constructive knowledge are not affected by this article.").

In my opinion, this case should be remanded to the trial court. When the circuit court granted the motion for a new trial based on the court's failure to charge the proper standard of proof for punitive damages, there were other motions pending, and the circuit court never ruled on them. Now that this court has reversed the order granting a new trial, those motions must be resolved. Exactly which rulings remain to be made should be determined by the circuit court, but they certainly include the court's duty to review the punitive damages award for compliance with due process. *See Mitchell v. Fortis Ins. Co.*, 385 S.C. 570, 583, 686 S.E.2d 176, 183 (2009) (holding an appellate court must conduct a de novo review of a trial court's determination of the constitutionality of a punitive damages award); *James v. Horace Mann Ins. Co.*, 371 S.C. 187, 194, 638 S.E.2d 667, 670 (2006) (requiring courts to

determine whether an award of punitive damages is consistent with due process).

The majority argues that Sellers should have cross-appealed this issue. I disagree because the trial court made no ruling on which to file such an appeal. When the trial court granted Sellers' motion for a new trial, Sellers became the prevailing party. The trial court did not rule against Sellers on any post-trial motion. The only possible additional action the trial court could have taken to benefit Sellers was to rule on some alternative ground raised in their post-trial motions. However, Sellers were not obligated to request the trial court rule on alternative grounds when the court had already ruled in Sellers' favor. *See I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 419, 526 S.E.2d 716, 723 (2000) ("It would be inefficient and pointless to require a respondent to return to the judge and ask for a ruling on other arguments to preserve them for appellate review."). Therefore, because Sellers were not aggrieved by any of the trial court's rulings, they could not cross-appeal. *See* Rule 201(b), SCACR ("Only a party aggrieved by an order, judgment, sentence or decision may appeal.").

Further, this is not an issue Sellers could have raised as an alternative sustaining ground. The trial judge's ruling granted a new trial as to all issues, including actual and punitive damages. It is not possible to "sustain" that ruling by asking this court to review the punitive damages amount for its consistency with due process. *See I'On,* 338 S.C. at 417, 526 S.E.2d at 722 (stating an additional sustaining ground is when "the party who prevailed in the lower court urges an appellate court to *affirm the lower court's ruling* for a reason other than one primarily relied upon by the lower court" (emphasis added)). Even if we were to rule in Sellers' favor on the constitutionality of the award, our ruling would simply reduce the amount of the punitive damages award, leaving part of the punitive damages award and the entire actual damages award intact. Even if we did grant a new trial, we would do so only as to punitive damages. Therefore, Sellers could not have raised the issue as an alternative sustaining ground. Moreover, there is no precedent for an appellate court to rule on the constitutionality of a punitive damages award except on review of such a ruling by the trial court. While our courts

have never expressly disapproved such a procedure, current law contemplates that the appellate courts review the trial court's ruling. *See Mitchell,* 385 S.C. at 583, 686 S.E.2d at 183.