**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Ginn-LA University Club Ltd., LLLP, Respondent,

v.

Amelia Capital III, LLC, Appellant.

Appellate Case No. 2011-194106

———————

Appeal From Richland County
Doyet A. Early, III, Circuit Court Judge

———————

Unpublished Opinion No. 2013-UP-067
Heard December 12, 2012 – Filed February 6, 2013

———————

**AFFIRMED AS MODIFIED**

———————

Keith D. Munson and Michael James Bogle, both of
Womble Carlyle Sandridge & Rice, LLP, of Greenville,
for Appellant.

Carl F. Muller, of Carl F. Muller, Attorney at Law, P.A.,
of Greenville; John Carroll Moylan, III, and Matthew
Terry Richardson, both of Wyche, PA, of Columbia, for
Respondent.

———————

**PER CURIAM:**  In this breach of contract case, Amelia Capital III, LLC (Amelia) appeals a jury verdict in favor of Ginn-LA University Club Ltd., LLLP (Ginn).  On appeal, Amelia argues the circuit court erred in (1) failing to exclude expert testimony as to the future costs for environmental remediation; (2) failing to admit into evidence certified tax assessor records as public records or self-authenticating documents; (3) refusing to allow Amelia to call Ginn's in-house counsel as a rebuttal witness; and (4) failing to instruct the jury that South Carolina law requires that contracts of indemnity be subject to strict construction.  We affirm as modified.

## FACTS/PROCEDURAL HISTORY

On August 11, 2005, Ginn and Amelia executed an Agreement for Purchase and Sale, wherein Ginn agreed to purchase, and Amelia agreed to sell, approximately 239.50 acres of real property located in Blythewood, South Carolina (the Property).  At the time of the contract, both Amelia and Ginn were aware of the existence of environmental contamination on the Property; however, the full extent of the contamination was unknown to either party.

Prior to executing the contract, Ginn retained an environmental consultant, QORE, Inc. (QORE), to inspect the Property and identify the environmental contamination.  QORE found two locations with environmental contamination on the Property: (1) in the area of a maintenance shed, and (2) in the area of two small above-ground storage tanks.  Subsequently, QORE reported its findings to Ginn and the South Carolina Department of Health and Environmental Control (DHEC).  In response, DHEC required the installation of a monitoring well in the area around the above-ground storage tanks.  QORE then prepared an assessment proposal for the installation of the monitoring well, which was approved by DHEC on July 25, 2005.

The sale of the Property closed on October 18, 2005.  To facilitate the sale of the Property, the parties negotiated a limited indemnity provision to the contract, stating as follows:

> 5.2  Environmental Indemnity.  Seller and Purchaser acknowledge that there have been Hazardous Materials disposed of or released upon the Land and certain adjoining land owned by Purchaser as set forth in the Environmental Reports (the "Contamination").  Seller has authorized that notification of the Contamination be

provided to the appropriate authorities at the South Carolina Department of [Health and] Environmental Control ("SCDHEC") and SCDHEC has required that additional assessment and removal measures be conducted and reported back to SCDHEC ("Additional Work"). Seller hereby agrees to indemnify, defend and hold harmless Purchaser from and against any and all claims, losses, liabilities, damages, costs and expenses, including attorney's fees and court costs arising from or relating to the Additional Work to the extent required to achieve "no further action" status, or its equivalent, from SCDHEC for the Contamination. All terms and provisions of this Section 5.2 shall survive the Closing or termination of this Agreement until such time as SCDHEC has issued a "no further action" letter, or its equivalent, whereupon this Environmental Indemnity shall terminate.

After the closing, QORE reported its testing of the monitoring well to DHEC on October 21, 2005. DHEC sent a letter to Ginn, suggesting additional remediation activities to the Property. Ginn later consulted with DHEC and created a remediation plan, which was reviewed and approved by DHEC. Thereafter, Ginn retained the firm of GEL Engineering (GEL) to perform the environmental assessment and cleanup of the Property. Ginn has continued to perform remediation activities on the Property, under the supervision of DHEC. Additionally, Ginn has developed and subdivided large portions of the Property into individual lots, which have either been sold or are being marketed for sale. To date, DHEC has still not issued a "no further action" letter.

On January 21, 2010, Ginn filed suit against Amelia for a number of causes of action related to Amelia's alleged breach of the indemnity provision of the contract. In the complaint, Ginn alleged it had incurred costs of $351,971.80 in performing environmental remediation on the Property. Additionally, Ginn alleged in the complaint and sought to recover at trial any expenses associated with additional work that may be required by DHEC in order to achieve "no further action" status, or its equivalent. A jury trial was held from April 4 to April 5, 2011. At the end of the trial, Ginn elected to pursue only its breach of contract claim.

On April 6, 2011, the jury returned a verdict in Ginn's favor in the amount of $939,877.12. Amelia filed a motion for a new trial absolute, or in the alternative, for a new trial *nisi remittitur* on April 15, 2011. A hearing was held on both motions. By order dated May 18, 2011, the court denied Amelia's motion for a new trial. This appeal followed.

## LAW/ANALYSIS

### I. Expert Testimony

Amelia argues that the circuit court erred in allowing QORE's Environmental Department Manager, Robert MacPhee, to provide expert testimony as to alleged future damages.

Here, Amelia made a pre-trial motion seeking to exclude any expert testimony from MacPhee because his "designation" as an expert witness came too late. The circuit court subsequently ruled "Mr. MacPhee . . . will be allowed to testify as any lay witness can testify to [sic], but he will not be allowed to give opinions." MacPhee later testified before the jury that he had had submitted a bid of $598,000 to complete the remedial services.

Although it is a close question, we believe this testimony constitutes fact testimony. The statements merely relayed the fact that MacPhee submitted a bid to complete the remediation for $598,000 and that he was willing to the do the work for this amount; the statements do not set forth an opinion that $598,000 worth of work was reasonably necessary to complete the remediation. *See* Rule 702, SCRE ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."); *Watson v. Ford Motor Co.*, 389 S.C. 434, 445-46, 699 S.E.2d 169, 175 (2010) (citing Rules 602 and 701, SCRE) ("[A] lay witness may only testify as to matters within his personal knowledge and may not offer opinion testimony which requires special knowledge, skill, experience, or training.").

Amelia further argues that to recover future damages, Ginn must provide some evidentiary basis for future work that has not yet been performed at the Property upon which the jury can rely in reaching a verdict.

We agree with Amelia's implicit argument that without expert evidence of the necessity of $598,000 worth of work to achieve "no further action" status, the inference of necessity the jury must draw from the mere fact that MacPhee submitted a $598,000 bid would be speculative. *See Winters v. Fiddie*, 394 S.C. 629, 647, 716 S.E.2d 316, 325 (Ct. App. 2011) ("In order for damages to be recoverable, the evidence should be sufficient to enable the court or jury to determine the amount thereof with reasonable certainty or accuracy." (citation omitted)); *id.* ("The evidence . . . should be such that a court or jury can reasonably determine an appropriate amount."); *cf. Pope v. Heritage Communities, Inc.*, 395 S.C. 404, 434, 717 S.E.2d 765, 781 (Ct. App. 2011) ("The determination of damages may depend to some extent on the consideration of contingent events *if a reasonable basis of computation is afforded, permitting a reasonably close estimate of the loss*." (emphasis added)).

Moreover, we believe MacPhee's testimony as to the future costs of achieving "no further action" status was irrelevant because Amelia was only entitled to remediation costs already incurred, and not future damages. *See* Rule 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); Rule 402, SCRE (stating that evidence that is not relevant is not admissible); *Town of Winnsboro v. Wiedeman-Singleton, Inc.*, 303 S.C. 52, 56, 398 S.E.2d 500, 502 (Ct. App. 1990), *aff'd*, 307 S.C. 128, 414 S.E.2d 118 (1992) (defining indemnity as a "form of compensation in which a first party is liable to pay a second party for a loss or damage the second party *incurs* to a third party" (emphasis added)). Here, Ginn has not presently incurred $598,000 worth of expenses to achieve "no further action" status; therefore, the recovery of this bid amount would be premature. *See Burns v. Universal Health Servs. Inc.*, 361 S.C. 221, 232, 603 S.E.2d 605, 611 (Ct. App. 2004) (stating a jury verdict will be upheld if there is any evidence to sustain the factual findings implicit in the jury's verdict). As to the amount of the verdict award, Amelia's counsel conceded at oral argument that Ginn had incurred $350,000 in remediation costs. Therefore, the jury's verdict in favor of Ginn is affirmed as modified to reduce the jury's verdict to $350,000.

## II. Judicial Notice

Amelia argues that the circuit court erred in failing to admit copies of reports issued by the Richland County Tax Assessor's Office because they were properly subject to judicial notice and admissible under the South Carolina Rules of

Evidence.  We find Amelia's argument regarding the circuit court's exclusion of the records is not preserved for appellate review.  It is clear from the trial transcript that the circuit court excluded the tax assessor records and that Amelia failed to make a proffer of the excluded evidence.  *See TNS Mills, Inc. v. S.C. Dep't of Revenue*, 331 S.C. 611, 628, 503 S.E.2d 471, 480 (1998) (stating the failure to make a proffer of excluded evidence will preclude review on appeal); *Greenville Mem'l Auditorium v. Martin*, 301 S.C. 242, 244, 391 S.E.2d 546, 547 (1990) ("An alleged erroneous exclusion of evidence is not a basis for establishing prejudice on appeal in absence of an adequate proffer of evidence in the court below.").

## III. Exclusion of Rebuttal Witness

Amelia argues that the circuit court erred in excluding Ginn's in-house counsel, Meredith Pickens, to rebut MacPhee's brief comment regarding Ginn's reliability in paying its bills.[1]  We disagree.

Amelia argues that Pickens' testimony was relevant to its indemnity obligation because this obligation only arises following Ginn's payment of the remediation costs to third parties.  In support of this argument, Amelia cites to paragraph 10 of Ginn's complaint and paragraph 5.2 of the Contract and attributes non-existent language to this provision; Amelia's brief places quotation marks around the phrase "following payment" as if it appeared in the indemnity provision.  However, it does not.  Paragraph 5.2 of the Contract states, in pertinent part:

> Seller hereby agrees to *indemnify, defend and hold harmless Purchaser from and against any and all claims, losses, liabilities, damages, costs and expenses*, including attorney's fees and court costs arising from or relating to the Additional Work to the extent required to achieve "no further action" status, or its equivalent, from SCDHEC for the Contamination.

(emphasis added).

We find this provision does not restrict Amelia's indemnity obligation to only those bills that have already been paid by Ginn to third parties. Therefore, we believe the

---

[1] In response to counsel's question as to whether Ginn had paid QORE for all the work completed at that point, MacPhee stated "Yes, Ginn pays their bills."

circuit court properly excluded Pickens' testimony on relevancy grounds. *See* Rule 401, SCRE ("'Relevant evidence' means evidence having any tendency to make the existence of any fact *that is of consequence* to the determination of the action more probable or less probable than it would be without the evidence." (emphasis added)); Rule 402, SCRE (stating that evidence that is not relevant is not admissible); *Vaught v. A.O. Hardee & Sons*, 366 S.C. 475, 480, 623 S.E.2d 373, 375 (2005) ("The admission of evidence is within the sound discretion of the trial judge, and absent a clear abuse of discretion amounting to an error of law, the trial court's ruling will not be disturbed on appeal.").

## IV. Jury Instruction

Amelia argues the circuit court erred in failing to give a jury instruction as to the construction of an indemnity provision. We disagree.

At trial, Amelia asked the circuit court, "could we have the instruction about an indemnification agreement is [sic] strictly construed." In *Sherlock Holmes Pub, Inc. v. City of Columbia*, 389 S.C. 77, 81, 697 S.E.2d 619, 621 (Ct. App. 2010), this court determined that the indemnity obligation at issue was subject to strict construction, not because it was an indemnity obligation, but because it was contractual language. This holding is consistent with our state's case law stating "[a] contract of indemnity will be construed in accordance with the rules for the construction of contracts generally." *See Campbell v. Beacon Mfg. Co.*, 313 S.C. 451, 453, 438 S.E.2d 271, 272 (Ct. App. 1993). Therefore, we believe the charge requested by Amelia was not necessary, and that the circuit court properly instructed the jury as to the law of contract interpretation. *See McCourt by and Through McCourt v. Abernathy*, 318 S.C. 301, 306, 457 S.E.2d 603, 606 (1995) (stating the trial judge is required to charge only the current and correct law of South Carolina); *O'Neal v. Carolina Farm Supply of Johnston, Inc.*, 279 S.C. 490, 495, 309 S.E.2d 776, 779-80 (Ct. App. 1983) ("It is not error to refuse a request to charge, even if it contains a correct and applicable statement of the law, if its substance is fairly covered by the court's general charge.").

**AFFIRMED.**

**HUFF, THOMAS, and GEATHERS, JJ., concur.**